IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 97-241

_____

GREGORY LLOYD INGRAHAM,                    )
                                           )
          Petitioner,                      )
                                           )          OPINION
     v.                                    )            and
                                           )           ORDER
STATE OF MONTANA,                             )
                                           )
          Respondent.                      )

_____

Gregory Lloyd Ingraham (Ingraham) is incarcerated at the Montana State Prison as a result of his conviction on July 19, 1996, of the offenses of negligent homicide, a felony, in violation of  45-5-104(1), MCA; criminal endangerment, a felony, in violation of  45-5-207(1), MCA; and criminal trespass to property, a misdemeanor, in violation of  45-6-203(1), MCA.  He had consumed alcohol prior to the acts giving rise to the convictions.  Ingraham presently is before this Court on his application for writ of habeas corpus, requesting review of the denial by the Twentieth Judicial District Court, Lake County, of his motion to continue bond pending appeal.

The sole issue before us is whether the District Court abused its discretion in denying Ingraham's motion to continue bond pending appeal.

The procedural steps via which Ingraham's request is before this Court have been detailed in a number of previous orders by the Court and by Justice Terry N. Trieweiler.  Those orders, entered in this cause number and in cause numbers 97-076 and 97-271, recount  in detail Ingraham's efforts--vis-a-vis habeas corpus and appeal--to obtain review of the District Court's denial of his motion to continue bond pending appeal; we need not recount those details here.  Suffice it to say that, after months of procedural entanglements, the matter is now before this Court for review pursuant to Ingraham's application for writ of habeas corpus.

Ingraham had been admitted to bail pending trial after being charged with the three offenses referenced above on October 17, 1995.  The District Court continued his bond pending sentencing after the July 19, 1996, jury verdicts finding him guilty of the two felony and one misdemeanor offenses.  The District Court sentenced Ingraham in open court on November 18, 1996, and remanded him to the custody of the Lake County

Sheriff for transport to the Montana State Prison.  The court subsequently entered a written judgment and commitment.

Immediately after sentencing, Ingraham moved  the District Court for continuation of bond pending appeal.  The District Court heard oral argument on the motion on December 3, 1996, and Ingraham and the State of Montana (State) filed proposed findings of fact and conclusions of law.  Thereafter, the District Court entered its findings of fact, conclusions of law and order denying the motion to continue bond pending appeal based on its determination that it was unable to find that, if released, Ingraham was not likely to pose a danger to the safety of any person or the community.

The availability of bail pending both trial and appeal is governed by statute in Montana.  With regard to bail pending appeal,   46-9-107, MCA, provides:

> The court shall order the detention of a defendant found guilty of an offense who is awaiting imposition or execution of sentence or a revocation hearing or who has filed an appeal unless the court finds that, if released, the defendant is not likely to flee or pose a danger to the safety of any person or the community.

In other words, a convicted criminal defendant is not to be admitted to bail unless the trial court finds that he or she is not likely to either flee or pose a danger.  We review a district court's decision denying an application for bail pending appeal for abuse of discretion.  Moore v. McCormick (1993), 260 Mont. 305, 306, 858 P.2d 1254, 1255.

In this case, the District Court entered findings of fact and, on the basis of those findings, determined that it was unable to find that, if released, Ingraham was not likely to pose a danger to the safety of any person or the community.  Ingraham contends that the court's ultimate determination is an abuse of discretion because it is not supported by the evidence and findings as a whole.  We observe at the outset that none of the District Court's purely factual findings are challenged as unsupported by the record.  Ingraham challenges only the weight given to, or the inferences drawn from, certain of those findings.  Specifically, he contends that the District Court's focus on matters predating alcohol treatment Ingraham received at the Menninger Clinic (Menninger) after his convictions and its failure to give more weight to a report by Dr. Richard Irons (Dr. Irons) from Menninger constituted abuses of discretion.

Before addressing the specific contentions advanced by Ingraham, it is appropriate to review undisputed findings of fact relating to the District Court's denial of his motion to continue bail pending appeal.  Ingraham was involved in a fatal vehicle accident, prior

to which he had been drinking, in 1993; no charges were brought against him as a result of the accident. In July of 1995, he was involved in an alcohol-related domestic violence incident which resulted in a criminal charge to which he subsequently pled guilty. As a result of the charge, Ingraham spent a number of days in the Talbott Marsh Treatment Center (Talbott Marsh) in Georgia in early August. On August 9, 1995, Talbott Marsh recommended that he abstain from alcohol and seek treatment from Menninger.

In October of 1995, Ingraham was charged in the instant case with the offenses of negligent homicide, criminal endangerment and criminal trespass to property arising out of a fatal vehicle accident prior to which he had been drinking. He had not followed the Marsh Talbott recommendations that he abstain from alcohol and seek treatment at Menninger prior to the accident. He was released on bond on condition that he not drink alcohol.

During the several weeks following his release on bond pending trial, Ingraham consumed alcohol daily while staying with friends. In February of 1996, he apparently drank prior to picking up a date and drove in a manner that frightened her. He continued to drink wine throughout the evening and the date felt he had had a sufficient quantity of alcohol to necessitate her operating his vehicle when they left the restaurant where they had dinner. In April of 1996, two Shopko pharmacy employees noticed the odor of alcohol on Ingraham's breath when he picked up prescriptions there.

Ingraham's trial in the instant case occurred in July of 1996. He was found guilty on July 19, 1996, and bond was continued, on the same conditions, pending sentencing.

In August, the State received police reports from the Missoula Police Department documenting incidents of Ingraham drinking while subject to bond requirements. During the initial interview for preparation of the presentence investigation report required by statute, Ingraham told the probation officer that, since the accident, his only consumption of alcohol was one beer the following day. During a later interview, he was confronted with the statements of his dinner date and admitted that he had consumed wine during that date in February of 1996.

Ingraham was treated at Menninger for alcohol dependency and bipolar affective disorder, type II, from September 9 through November 1, 1996. In a report to Ingraham's counsel for purposes of sentencing, Menninger's Dr. Irons reported that, during Ingraham's time there, he came to develop what the treatment team believed was genuine remorse for his lack of responsibility in operating a vehicle while under the

influence of alcohol. Based on its experience with him, the team did not see him as a danger to the public "if he is not under the influence of alcohol while driving a motor vehicle, and compliant with psychotropic medications." Dr. Irons also believed Ingraham would comply with measures that could be put in place to assure abstinence from alcohol and other mood-altering substances.

On the face of it, the abovementioned facts are sufficient to support the District Court's determination that it could not find that, if released on bond, Ingraham was not likely to pose a danger to any person or to the community. The facts demonstrate serious incidents involving alcohol consumption by Ingraham prior to this case; a failure to abstain from alcohol and seek treatment even after being advised to do so by Talbott Marsh; an alcohol-related fatal vehicle accident which resulted in the charges on which this case is based; a number of violations of the bond condition that he not consume alcohol; and his initial falsehood to the probation officer writing the presentence report that he had not consumed any alcohol since the day after the accident.

Against this backdrop, Ingraham contends that his treatment at Menninger, after his conviction, and Dr. Irons' report are more reliable indicators of his present condition and risk if released on bond pending appeal than his pretreatment behavior. Stated differently, he asserts that the District Court was compelled to give more weight to the facts that he sought treatment after conviction and that Dr. Irons believed he was not a risk than to the other evidence before it. We disagree.

"Discretion" connotes that part of the judicial function which decides questions according to the particular circumstances of the case, uncontrolled by fixed rules of law. State ex rel. Leach v. Visser (1988), 234 Mont. 438, 447, 767 P.2d 858, 863 (citation omitted). An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. Investigative Records of City of Columbus Pol. Dept. (1995), 272 Mont. 486, 488, 901 P.2d 565, 567 (citation omitted). In addressing discretionary matters such as a motion for bond pending appeal, a court's application of conscientious judgment necessarily involves weighing evidence and making reasonable inferences therefrom in order to assess a likelihood of danger. Thus, the question for this Court is not whether we would have reached the same decision but, rather, whether the District Court abused its discretion in reaching the decision to deny Ingraham's motion for bond pending appeal.

On this record, it is clear that the District Court could have chosen to give additional weight to the Menninger treatment and Dr. Irons' report as the most recent evidence regarding Ingraham and his potential risk of danger to others if released pending appeal. The District Court was not required to do so, however, and this is especially true given the equivocal nature of Dr. Irons' report. As noted above, the treatment team did not see Ingraham as a danger to the public "if he is not under the influence of alcohol while driving a motor vehicle. . . ." (Emphasis added.) Moreover, Dr. Irons "believed" that Ingraham would be compliant with any measures put in place to assure Ingraham's abstinence from alcohol.

While Ingraham may well have significant rehabilitation potential and might--if and when given the chance--comply with requirements that he abstain from alcohol, neither Dr. Irons' report nor any evidentiary showing can guarantee such results in advance. He clearly did not abstain during the time such abstention was a court-ordered condition of bail. Nor is the treatment team's view that Ingraham is not a risk to the public "if" he does not drive a vehicle while under the influence of alcohol necessarily comforting given Ingraham's alcohol-related history. Given the record in this case, we conclude that the District Court did not abuse its discretion in refusing to give more weight to the Menninger treatment and report than to Ingraham's pre-Menninger conduct. To conclude otherwise would force trial courts to grant bond pending appeal in every case where a convicted defendant obtained a generally supportive posttrial report based on subjective beliefs and predictions of future behavior. Neither 46-9-107, MCA, nor our abuse of discretion standard contemplates such a requirement.

Ingraham also contends that the District Court erroneously abstracted a risk of present danger from the alcohol-related domestic violence incident which occurred in July of 1995. It is true that the court mentioned that incident several times in its findings of fact. Some of those references were in a purely historical context and in relation to Ingraham's resulting trip to Marsh Talbott and the Marsh Talbott recommendations that Ingraham abstain from alcohol and seek treatment at Menninger, which recommendations were not followed in the two months after they were made and before the fatal alcohol-related accident underlying the present proceedings. In assessing the risk of danger to persons and the community if Ingraham were released on bond pending appeal, however, the court clearly gave more weight to Ingraham's several violations of the bond condition that he abstain from alcohol and to his posttrial falsehood to the probation officer

about
drinking while released on bond than it gave to the domestic violence incident.

Ingraham also argues briefly that the bond condition that he abstain from alcohol entirely during his release on bond pending trial and sentencing was unconstitutional and that violation of such an unconstitutional bond condition cannot constitute a proper basis for denying bond on appeal.  It does not appear that he raised this--or any other-- objection  to the abstention condition at the time it was imposed, or at any time thereafter, in the District Court.  Indeed, his proposed findings and conclusions regarding his motion for bond pending appeal propose that the same abstention condition be continued.  Ingraham having waived this objection by failing to raise it in the District Court (see   46-20-104(2), MCA), we decline to address this argument further.

Finally, Ingraham contends that, because at least one issue in his pending appeal creates a  strong likelihood that this Court will reverse his convictions, equity and fairness require that he be released on bond pending appeal.  We disagree.  As discussed above,   46-9-107, MCA, governs the availability of bond pending appeal.  Nothing in that statute refers to the likelihood of success on appeal.  Nor does Ingraham cite to any authority under which the likelihood of success on appeal is an appropriate consideration in either an initial determination of a motion for bond pending appeal or a review by this Court of a district court's initial determination.  Moreover, adopting Ingraham's approach would require this Court to determine in advance of the arrival of the appeal whether there is a likelihood of success in the appeal and, if so, the magnitude of that likelihood. Not only is such a determination a practical impossibility, it would necessitate an advisory opinion by this Court.  We do not issue advisory opinions.  State ex rel. Fletcher v. District Court (1993), 260 Mont. 410, 419, 859 P.2d 992, 997.

We conclude that the District Court did not abuse its discretion in denying Ingraham's motion for continuation of bond pending appeal and, accordingly,

IT IS ORDERED that Ingraham's application for writ of habeas corpus is DENIED.

DATED this 24th day of July, 1997.


/S/   KARLA M. GRAY
/S/   W. WILLIAM LEAPHART
/S/   WILLIAM E. HUNT, SR.
/S/   JIM REGNIER


Chief Justice J. A. Turnage has recused himself from this matter.

Justice James C. Nelson specially concurs.

I concur fully in our opinion and order. I write separately only to address the "procedural entanglements" which preceded this decision. As stated, our orders in cause numbers 97-076 and 97-271 detail the tangled and lengthy history of Ingraham's attempts to obtain our review of the trial court's denial of his motion to continue bond pending appeal. These procedural contortions arose for a very simple reason. This Court has no statutory authority to review a district court's denial of bail pending appeal either by direct appeal or via a petition for writ of habeas corpus. While our decisions in Bretz v. Sheriff of Lewis and Clark County (1975), 167 Mont. 363, 539 P.2d 1191, and Moore v. McCormick (1993), 260 Mont. 305, 858 P.2d 1254, appear to provide authority for what we are doing here, in truth, that authority or, rather, our lack of authority, was never at issue in either of those two cases. In the case at bar we have disposed of Ingraham's habeas corpus petition by reviewing the trial court record and the court's decision for abuse of discretion simply because both the Defendant and the State have agreed that we should proceed in that fashion--not because the law authorizes us to do so.

Under  3-2-212, MCA, and under the statutory scheme set out at Title 46, Chapter 22 of the Montana Code this Court and individual members of this Court can-- and, in my view, must--deal with habeas corpus petitions as original proceedings when those are filed here. In situations such as the one at issue, our decision to grant or deny habeas relief must, of necessity, be based on a factual record. In the context of an original proceeding we have only two ways to accomplish that. Either we develop our own record by holding an evidentiary hearing ourselves or we must assign that task to another district court. The latter approach will invariably be necessary, as this Court, as an appellate court, is not structurally set up to conduct an evidentiary hearing. Unfortunately, as this case ably demonstrates, having to deal with habeas petitions in this fashion is highly inefficient, time consuming, wasteful of judicial resources and ill serves the accused, the courts or the criminal justice system.

As both Ingraham and the State appear to concede, appellate review of the trial court record and decision to deny bail pending appeal for abuse of discretion is the obvious best approach in cases such as this. The habeas corpus statutes should be amended by the next legislature to provide authority for this procedure to the end that the fiasco which has characterized this case will not again be repeated.

/S/  JAMES C. NELSON