No. 98-422

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 72

299 Mont. 102

997 P. 2d 786

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOHN COE RICHARDSON,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis & Clark,

The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

**For Appellant:**

William F. Hooks, Appellate Defender Office; Helena, Montana

**For Respondent:**

Hon. Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General; Helena, Montana

Mike McGrath, Lewis & Clark Count Attorney; Helena, Montana

Submitted on Briefs: November 18, 1999

Decided: March 21, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1.John Richardson (Richardson) appeals from the order of the First Judicial District Court, Lewis and Clark County, revoking his suspended sentence and sentencing him to the Montana State Prison (MSP) for the remainder of the 20-year term originally imposed, and from its amended judgment conditioning his parole on completion of Phases I and II of the sexual offender treatment at the MSP. We affirm in part, reverse in part and remand.

¶2.We restate the issues on appeal as follows:

¶(1). Did the District Court abuse its discretion in revoking Richardson's suspended sentence and sentencing him to the remaining portion of the sentence originally imposed?

¶(2). Did the District Court err in imposing an additional condition on Richardson's sentence on revocation?

*BACKGROUND*

¶3.The State of Montana (State) charged Richardson with felony sexual assault against a minor child in 1995. Richardson subsequently entered a plea of guilty pursuant to an Acknowledgment of Waiver of Rights by Plea of Guilty. The District Court sentenced Richardson to a term of 20 years imprisonment at the MSP, with all but 70 days suspended, and the 70 days to be served in the Lewis and Clark County Jail in 14-day increments for each of the next five years. The conditions of the suspended portion of Richardson's sentence included:

a.The defendant shall remain in, and complete, [sex offender treatment provider] Ron Silvers' sex offender program. He shall abide by all treatment recommendations and requirements, including, but not limited to, the following:

. . . .

b. The defendant shall have no unsupervised contact with any minor aged male or female.

c. The defendant shall refrain from attendance at any gathering where minor aged persons are likely to frequent.

Richardson entered the sex offender treatment program operated by Ron Silvers (Silvers) on March 9, 1995, and Silvers subsequently referred him to additional individual therapy to deal with post traumatic stress disorder.

¶4.Richardson's coworkers at the State Department of Disability Services invited Silvers to a staff meeting in November of 1995, and informed him of their concerns about Richardson's presence at gatherings where children had been present. Silvers and Cathy Murphy (Murphy), Richardson's probation officer, attended another staff meeting on August 27, 1997, during which they were informed of additional incidents of Richardson's contact with children. Silvers subsequently discharged Richardson from his sex offender treatment program because Richardson's lack of progress was unacceptable in an outpatient treatment program for three reasons: 1) Richardson continued to violate the program rules regarding contact with children; 2) Richardson's ongoing unresolved issues of blame, anger, avoidance, and denial were indicators of increased risk to reoffend; and 3) Richardson demonstrated an oppositional and defiant attitude in group therapy, particularly when receiving critical and vital feedback on dysfunctional behaviors and attitudes.

¶5.On September 2, 1997, the State petitioned the District Court to revoke Richardson's suspended sentence based on his failure to abide by its conditions. During the hearing on the State's petition, Richardson admitted he had contact with minor children, which he characterized as incidental and unintentional, leading to his discharge from Silvers' program. Silvers and Murphy both testified that Richardson was a high risk to reoffend. The court subsequently found that Richardson had violated the conditions of his suspended sentence, revoked the remaining portion of the suspended sentence, and sentenced Richardson to the MSP for the remainder of the originally-imposed 20-year

term. The court also required Richardson to complete Phases I and II of the sexual offender treatment at the MSP before being granted parole. Richardson appeals.

## STANDARD OF REVIEW

¶6.We review a district court's decision to revoke a suspended sentence to determine whether the court abused its discretion. *State v. Lindeman* (1997), 285 Mont. 292, 302, 948 P.2d 221, 228 (citations omitted). Where an issue is whether the court had authority to take a specific action, however, "the question is one of law over which our review is plenary." *State v. Nelson*, 1998 MT 227, ¶ 16, 291 Mont. 15, ¶ 16, 966 P.2d 133, ¶ 16.

## DISCUSSION

**¶7. Did the District Court abuse its discretion in revoking Richardson's suspended sentence and sentencing him to the remaining portion of the sentence originally imposed?**

¶8.If a district court finds that a defendant has violated the terms and conditions of a suspended sentence, it may:

(a) continue the suspended . . . sentence without a change in conditions;

(b) continue the suspended sentence with modified or additional terms and conditions; [or]

(c) revoke the suspension of sentence and require the defendant to serve either the sentence imposed or any lesser sentence[.]

Section 46-18-203(7), MCA (1997). The standard for revoking a suspended sentence requires that the district court be reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty. *Lindeman*, 285 Mont. at 302, 948 P.2d at 228 (citations omitted). In addition, the State need only prove a violation of the terms and conditions of the suspended sentence by a preponderance of the evidence. Section 46-18-203(6), MCA (1997).

¶9.At the conclusion of the revocation hearing in the present case, the District Court explained to Richardson that

[t]he only thing keeping you out of prison in the first place was the fact that I placed you

in Ron Silvers' program. I asked you to stay in the program.

. . . .

[W]hen I make an order, I mean it. I told you if you came back and violated it I would send you to prison. And I guess this hard choice we've got here is of your choice. You put us in this spot.

I've got a highly respected sex offender person telling me that you're an extremely high risk. I've got the probation people telling me that you are a high risk and you should go to prison. So in the interest of protecting the children of this state, which I think is my primary obligation at this point, since we've already tried to work with you, your sentence will be revoked.

Following these oral statements, the court entered a written order. The order noted that Richardson "admitted his violation of compliance with the sexual treatment program," and stated that the District Court "found that [Richardson] had violated the terms of his sentence and accordingly revoked the remaining portion of the previously imposed suspended sentence."

¶10. As a preliminary matter, Richardson contends that, under *Black v. Romano* (1985), 471 U.S. 606, 611-12, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636, 643, he is entitled to--but did not receive--a written statement of the evidence relied on and the reasons for revoking his probation. We agree that *Black* requires a written statement of the evidence relied on and the reasons for revoking probation (*Black*, 471 U.S. at 611-12, 105 S.Ct. at 2258, 85 L. Ed.2d at 643), but disagree that the District Court committed reversible error in this regard.

¶11. In *Black*, the sentencing court revoked the defendant's probation and ordered execution of the previously imposed sentence. In doing so, it prepared a memorandum of its findings, including that the defendant had violated his probation conditions by leaving the scene of an accident, but did not expressly indicate that it had considered alternatives to revoking probation. *Black*, 471 U.S. at 609, 105 S.Ct. at 2256, 85 L.Ed.2d at 641. The defendant petitioned the federal district court alleging that the sentencing court had violated his right to due process by revoking his probation without considering the alternatives to incarceration. *Black*, 471 U.S. at 610, 105 S.Ct. at 2257, 85 L.Ed.2d at 641. Both the district court and the Eighth Circuit Court of Appeals agreed, holding that the sentencing court was required to consider alternatives to incarceration on the record.

*Black*, 471 U.S. at 610, 105 S.Ct. at 2257, 85 L.Ed.2d at 641-42.

¶12.The United States Supreme Court reversed. *Black*, 471 U.S. at 616, 105 S.Ct. at 2260, 85 L.Ed.2d at 646. In doing so, it recognized that the required written statement "helps to insure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Black*, 471 U.S. at 613-14, 105 S.Ct. at 2259, 85 L.Ed.2d at 644. The Supreme Court also acknowledged, however, that,"'when other procedural safeguards have minimized the risk of unfairness, there is a diminished justification for requiring a [court] to explain [its] rulings.'" *Black*, 471 U.S. at 613, 105 S.Ct. at 2259, 85 L.Ed.2d at 644 (quoting *Harris v. Rivera* (1981), 454 U.S. 339, 344-45, n.11, 102 S.Ct. 460, 463-64, n.11, 70 L.Ed.2d 530, 535, n.11 (per curiam)). As a result, since the petitioner in *Black* did not dispute that he had an opportunity to present mitigating factors and to argue the appropriateness of alternatives to incarceration, the Supreme Court concluded that the sentencing court's memorandum and the hearing transcript, taken together, provided the necessary written statement explaining the evidence relied upon and the reasons for revoking probation. *Black*, 471 U.S. at 615-16, 105 S.Ct. at 2260, 85 L.Ed.2d at 645.

¶13.In the present case, while not disputing that he was given an opportunity to present mitigating factors and to argue that alternatives to incarceration would be appropriate, Richardson urges that the District Court's written order is insufficient. However, the court's oral findings and written order--taken together--explain that the court relied on Richardson's admission that he violated the condition that he comply with the requirements of Silvers' sex offender program, his discharge from that program, and Silvers' and Murphy's opinions that he was a high risk to reoffend. The oral findings and written order also explain that Richardson's suspended sentence was revoked to protect the children of Montana. Like the Supreme Court in *Black*, we conclude the District Court's oral findings and written order provide the necessary written statement explaining the evidence relied on and the reasons for revoking Richardson's suspended sentence. As a result, *Black* provides no basis for reversing the District Court's order and we turn to Richardson's contention that the court abused its discretion in doing so.

¶14.The District Court found that Richardson violated the terms of his suspended sentence by failing to remain in, and complete, Silver' sex offender treatment program. Richardson does not dispute the court's finding, and we have held that one violation is sufficient to support a district court's revocation of a suspended sentence. *See Lindeman*, 285 Mont. at 306, 948 P.2d at 230. Therefore, the District Court had the discretion to revoke his

suspended sentence and sentence him to serve the remainder of the 20-year sentence originally imposed. *See* § 46-18-203(7)(c), MCA (1997); *State v. Stangeland* (1988), 233 Mont. 230, 235, 758 P.2d 776, 779. Based on the overall record, however, Richardson contends the District Court should have suspended his sentence again and allowed him to seek continued treatment in a program of his choosing because incarceration will not facilitate his rehabilitation.

¶15.Once a violation of the terms or conditions of a suspended sentence has been established, the inquiry at a revocation hearing is whether the purposes of rehabilitation are being achieved and whether those purposes are best served by continued liberty or incarceration. *Lindeman*, 285 Mont. at 308, 948 P.2d at 231 (citation omitted). Because the District Court conditioned Richardson's suspended sentence on his completion of Silvers' sex offender treatment program, it is apparent that rehabilitation was to be achieved through completion of that program.

¶16.Silvers testified extensively at the revocation hearing regarding whether the purposes of rehabilitation were being achieved. He first explained that the goal of his sex offender treatment program is "to change behaviors, change perceptions, and have people live in a healthier safer manner so that they lower their own risk day to day, as much as humanly possible." According to Silvers, his program accomplishes this goal by teaching participants how to lower their risk of reoffense by recognizing and removing themselves from high risk situations, such as those where children are present, and by teaching them to recognize what leads them to molest young children in an effort to make them self-aware so that they may change their behaviors.

¶17.Silvers went on to explain Richardson's lack of progress toward meeting the program's goals and, thus, the lack of progress toward achieving the purposes of rehabilitation. He explained that one of the reasons for Richardson's discharge was continued reports of Richardson's unsupervised contact with children. Silvers also explained that he did not sense that Richardson was developing any self-awareness. Moreover, Silvers testified that Richardson was discharged from the program because, after two and one-half years, he had not made substantial enough progress to justify keeping him in the program and was an extremely high risk to reoffend.

¶18.Silvers' testimony provides ample evidence to support the District Court's implicit determination that the purposes of rehabilitation were not being served by Richardson's suspended sentence. Therefore, the focus turns to whether the purposes of rehabilitation

are best served by continued liberty or incarceration. As Richardson concedes, the evidence on this question was conflicting.

¶19. After testifying that Richardson was discharged from his program, at least in part, for unsupervised contacts with children, Silvers opined that Richardson's continued violation of the program rules was indicative of an "extremely high risk to reoffend." Silvers explained that an offender demonstrates a need for more intensive therapy in a secure setting and without access to children when the offender is not willing or able to adhere to the outpatient treatment program's rules which maintain community safety. In addition, Murphy testified she did not feel continued sex offender therapy would adequately protect the community, even until Richardson received inpatient treatment for his post traumatic stress disorder issues.

¶20. Richardson's current psychiatric social worker, Carroll Jenkins (Jenkins), on the other hand, opined that Richardson was a low risk to reoffend at the time of the hearing. Jenkins also testified regarding how the "system" failed Richardson and how Richardson could be rehabilitated with continued liberty. He explained that the "system" places people in programs and expects them to comply with the program, rather than matching the client with the proper program. In Jenkins' opinion, this is what led to Richardson's discharge from Silvers' program. Jenkins opined that Richardson could be successful in a treatment program matched to his needs, such as the ego-enhancing approach Jenkins uses. He also explained that Richardson had pursued inpatient treatment for post traumatic stress disorder but that the "ball had been dropped." According to Jenkins, he "picked up the ball" the week prior to the revocation hearing and got Richardson on two waiting lists, each with a six-month wait. Finally, Jenkins opined that, once the post traumatic stress disorder issues were resolved, Richardson would be more amenable to treatment.

¶21. In its oral findings, the District Court specifically acknowledged the conflicting opinions of Silvers, on the one hand, and Jenkins, on the other, regarding Richardson's risk to reoffend. In addition, the court reiterated Murphy's opinion that Richardson was a high risk to reoffend and should be incarcerated. It accepted Silvers' and Murphy's testimony that Richardson was a high risk to reoffend and expressly stated that it was revoking Richardson's suspended sentence in the interest of protecting the children of Montana.

¶22. A district court abuses its discretion when it "acts arbitrarily without conscientious judgment or exceeds the bounds of reason." *Ingraham v. State* (1997), 284 Mont. 481, 485, 945 P.2d 19, 22 (citation omitted). In this case, the court considered the conflicting

evidence and made a decision supported by the evidence. We hold, therefore, that the District Court did not abuse its discretion when it revoked Richardson's suspended sentence.

## ¶23. Did the District Court err in imposing an additional condition on Richardson's sentence on revocation?

¶24.In its 1995 judgment on Richardson's guilty plea, the District Court sentenced Richardson to a 20-year term of imprisonment at the MSP, with all but 70 days suspended. In subsequently revoking the suspended sentence, it sentenced Richardson to the MSP for the remaining portion of the original 20-year sentence and added the requirement that Richardson complete Phases I and II of the sexual offender treatment at the MSP before he could be paroled. Richardson contends that the District Court lacked the statutory authority to restrict his eligibility for parole when it revoked his suspended sentence and the State properly concedes that Richardson is correct.

¶25.If a district court finds that a defendant has violated the terms or conditions of a suspended sentence, the court may "revoke the suspension of sentence and require the defendant to serve either the sentence imposed or any lesser sentence." Section 46-18-203 (7)(c), MCA (1997). Nothing in the statute authorizes a court to impose additional restrictions when revoking a suspended sentence. *Lindeman*, 285 Mont. at 309, 948 P.2d at 232. We conclude, therefore, that the District Court exceeded its authority under § 46-18-203(7)(c), MCA (1997), when it conditioned Richardson's parole eligibility on completion of Phases I and II of the sexual offender treatment at the MSP. As a result, this case must be remanded for the limited purpose of striking the condition on Richardson's parole eligibility erroneously added by the District Court on revocation of his suspended sentence.

¶26.Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER