FILED

01/16/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0677

DA 15-0677

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 7

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DENNIS LEO SCHOWENGERDT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Powell, Cause No. DC 12-55
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellant Defender, Koan Mercer, Assistant Appellant
Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

            Lewis K. Smith, Powell County Attorney, Deer Lodge, Montana

Submitted on Briefs:  September 6, 2017

Decided:  January 16, 2018

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     This Court heard an initial appeal by Dennis Schowengerdt ("Schowengerdt"), after which we remanded to the Third Judicial District Court, Powell County, to further inquire into whether Schowengerdt's complaints regarding appointed counsel were seemingly substantial and necessitated a hearing to determine the validity of Schowengerdt's allegations and the need for substitution of counsel.  The District Court conducted a hearing per our instructions and again denied Schowengerdt's request for substitution of counsel.  Schowengerdt appeals this Order.

¶2     We address the following issues:

*Issue One: Whether the District Court erred in ruling that Schowengerdt was not entitled to substitution of counsel.*

*Issue Two: Whether Schowengerdt was denied effective assistance of counsel.*

¶3     We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4     The initial facts of the case are undisputed: On December 8, 2012, Schowengerdt killed his wife, Tina Schowengerdt, by repeatedly stabbing her in their home near Deer Lodge.  The following morning, Schowengerdt drove to the police station in Deer Lodge and, in a recorded statement, told officers that last night he, "killed that son of a bitch [he] was living with.  So arrest me, lock me up, I'm guilty, I killed her."  On January 2, 2013, Steven Scott ("Scott") of the Office of the State Public Defender (OPD) was assigned as counsel for Schowengerdt.  Scott commenced representation and filed several pleadings on behalf of his client.

2

¶5 On January 17, 2013, Scott filed a Notice that Schowengerdt might assert a defense of justifiable use of force. On April 2, 2013, immediately prior to a hearing on his motion to change venue, Schowengerdt decided to plead guilty to deliberate homicide. Schowengerdt signed an Acknowledgment of Waiver of Rights by Plea of Guilty and admitted that he "knowingly stabbed Tina Schowengerdt with a knife causing her death . . . [on] 12/08/12." The District Court proceeded through a detailed colloquy, during which Schowengerdt indicated that his plea was knowing and voluntary, that he was satisfied with Scott's services, and that he felt he could not "handle" a trial. The District Court accepted the guilty plea.

¶6 On June 12, 2013, Schowengerdt sent a letter to the District Court requesting new counsel. In the letter, he wrote: "I am Requesting a Withdraw [sic] as My Attorney at this time Mr Steve Scott; I AM Requesting For proper Reputation [sic] in My case." Two days later, Scott filed a motion to withdraw Schowengerdt's guilty plea, explaining in the supporting brief: "Mr. Schowengerdt . . . stated he wants to withdraw his plea of guilty and proceed onto trial in this case. Mr. Schowengerdt indicated he made a mistake when he entered into the plea and now wishes to withdraw his plea and proceed to trial." Scott added that he felt it was his "duty as a licensed attorney in Montana to point out to the Court there is not any case law in Montana to support Mr. Schowengerdt's position as to the withdraw[al] of plea." After reviewing Schowengerdt's letter, the District Court ordered Scott to submit a memorandum explaining his position regarding continued representation of Schowengerdt. Scott responded, stating that he had "no problem with

3

continuing to represent [Schowengerdt]," and that he did not feel there had been a breakdown of the attorney-client relationship.

¶7 On July 2, 2013, the District Court held a hearing to address Schowengerdt's letter requesting a change in representation. As Schowengerdt was about to explain his dissatisfaction with his assigned counsel, the District Court interrupted him and Schowengerdt was not provided the chance to speak to the issue. Instead, the District Court directed Schowengerdt to follow the OPD's process for obtaining substitute counsel.

¶8 On August 27, 2013, the District Court held a hearing on Schowengerdt's Motion to Withdraw Guilty Plea, at which the District Court inquired whether the representation issue had been resolved. Scott explained that OPD denied Schowengerdt's request for new counsel and that Schowengerdt had not appealed the decision pursuant to OPD's administrative policies. The District Court deemed the representation matter resolved and moved on to Schowengerdt's Motion to Withdraw Guilty Plea.

¶9 Regarding the Motion to Withdraw Guilty Plea, Scott reiterated what he had previously submitted to the District Court, stating: "[Schowengerdt] did not have a basis to give me as to why he felt his plea should be withdrawn . . . ." The District Court invited Schowengerdt to speak, and Schowengerdt stated that he felt unprepared to address his withdrawal of plea but stated, "I don't think I'm guilty. . . . I know what the outcome was, but I think I was fighting for my life." The District Court then denied the Motion to Withdraw Guilty Plea and concluded that Schowengerdt had not "in any way asserted his plea of guilty was involuntary and there is no basis in the record to conclude [his] guilty

4

plea was involuntary." The District Court denied Schowengerdt's motion to withdraw his guilty plea and sentenced him to life in the Montana State Prison.

¶10 Schowengerdt appealed, arguing that Scott failed to provide effective assistance of counsel and that the District Court failed to adequately inquire into Schowengerdt's complaints of ineffective assistance. We agreed that the District Court failed to adequately inquire into Schowengerdt's complaints regarding his counsel which necessitated a remand for further proceedings on this issue. *State v. Schowengerdt*, 2015 MT 133, ¶ 21, 379 Mont. 182, 348 P.3d 664. We held:

> Upon remand, the District Court must adequately inquire into Schowengerdt's complaints about his assigned counsel to determine whether his complaints are seemingly substantial and necessitate a hearing to determine the validity of Schowengerdt's allegations and the need for substitution of counsel. If the court determines that new counsel is warranted, then, in accordance with the relief sought by Schowengerdt, he will have "the opportunity to present his motion to withdraw his guilty plea to the district court" with new counsel. We express no opinion on the merits of Schowengerdt's motion to withdraw his guilty plea. If, on the other hand, the court determines that Schowengerdt has not presented seemingly substantial complaints about his counsel, or is otherwise not entitled to new counsel, then the judgment and sentence are affirmed, subject to Schowengerdt's right to appeal the District Court's determinations made on remand, and his preserved issue concerning ineffective assistance of counsel.

*Schowengerdt*, ¶ 24.

¶11 On August 7, 2015, the District Court held a proceeding to inquire into Schowengerdt's complaints about Scott's representation to determine whether the complaints were seemingly substantial such that they warranted a hearing. The District Court appointed new counsel to Schowengerdt for this proceeding and heard from both Schowengerdt and Scott. Schowengerdt described in detail his dissatisfaction with Scott's

5

representation. Schowengerdt perceived a lack of loyalty by Scott towards Schowengerdt as his client; Schowengerdt expressed concerns that Scott had not investigated the case properly; and Schowengerdt voiced frustration stemming from a lack of comprehension of the proceedings and the scope of Scott's representation. After hearing from Schowengerdt, the District Court found his complaints to be "substantial," such that they merited further explanation and consideration.

¶12 Next, Schowengerdt's new counsel succinctly summarized his client's complaints to the District Court: (1) Schowengerdt had trouble dealing with what had happened—he wanted, but was not able, to speak with a doctor or counselor; (2) Schowengerdt did not have a meaningful attorney-client relationship—Schowengerdt felt that Scott was working against him and not giving him the time and attention he needed to understand and be prepared for the proceedings; (3) Schowengerdt asked Scott to do things he did not do—Scott did not investigate or follow up on certain suggestions such as looking into the victim's phone and laptop records or medication she might have been taking; and (4) Schowengerdt did not understand all the proceedings—alleging a lack of communication and comprehension due to Scott's shortcomings and Schowengerdt's hearing impairment.

¶13 The District Court then provided Scott with an opportunity to respond to Schowengerdt's allegations. Scott, referencing his contemporaneous notes throughout the proceeding, responded that he felt he could successfully communicate with Schowengerdt throughout the representation. Scott vehemently denied any knowledge of, contact with, or collaboration with Schowengerdt's daughter or other community members, and Scott explained each of his choices to not pursue certain avenues or strategies that Schowengerdt

6

had suggested. Scott also described how he followed up with most of Schowengerdt's suggestions and requests but found certain investigations unproductive or irrelevant in light of the evidence and prior proceedings.

¶14 At the conclusion of this proceeding, the District Court asked all parties whether they were satisfied with the proceeding. Nobody voiced an objection. On September 15, 2015, the District Court issued an order again denying Schowengerdt's request for substitution of counsel. Schowengerdt appeals this Order.

## STANDARDS OF REVIEW

¶15 We review a district court's consideration of a request for substitution of counsel for abuse of discretion. *State v. Long*, 206 Mont. 40, 45, 669 P.2d 1068, 1071 (1983); *see also State v. Aguado*, 2017 MT 54, ¶ 8, 387 Mont. 1, 390 P.3d 628; *State v. Dethman*, 2010 MT 268, ¶ 11, 358 Mont. 384, 245 P.3d 30. This Court considers whether the district court acted arbitrarily without employment of conscientious judgment or exceeded "the bounds of reason resulting in substantial injustice." *State v. Brasda*, 2003 MT 374, ¶ 14, 319 Mont. 146, 82 P.3d 922 (citing *State v. Richardson*, 2000 MT 72, ¶ 24, 299 Mont. 102, 997 P.2d 786).

¶16 We review for abuse of discretion both procedures employed by a district court during the initial inquiry into defendant's complaints, *see City of Billings v. Smith*, 281 Mont. 133, 135–36, 932 P.2d 1058, 1059–60 (1997); *Dethman*, ¶¶ 12–14, and a district court's analysis of whether a defendant's claims are seemingly substantial, necessitating a further hearing, *see State v. Holm*, 2013 MT 58, ¶¶ 16, 23, 369 Mont. 227, 304 P.3d 365 (citing *State v. Gallagher* (*Gallagher I*), 1998 MT 70, ¶ 23, 288 Mont. 180, 955 P.2d 1371).

7

We review a district court's factual findings made during a hearing for clear error. *State v. Gallagher* (*Gallagher II*), 2001 MT 39, ¶ 5, 304 Mont. 215, 19 P.3d 817 (citing M. R. Civ. P. 52 (a)). Factual findings are clearly erroneous if they are not supported by "substantial credible evidence." *Engel v. Gampp*, 2000 MT 17, ¶ 31, 298 Mont. 116, 993 P.2d 701.

¶17 Claims of ineffective assistance of counsel are mixed questions of law and fact that we review de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861; *see also Longjaw v. State*, 2012 MT 243, ¶ 11, 366 Mont. 472, 288 P.3d 210 (reviewing a conflict of interest issue relating to ineffective assistance of counsel de novo); *State v. Clary*, 2012 MT 26, ¶ 12, 364 Mont. 53, 270 P.3d 88.

## DISCUSSION

¶18 *Issue One: Whether the District Court erred in ruling that Schowengerdt was not entitled to substitution of counsel.*

¶19 When investigating a defendant's request for new counsel, a district court must first conduct an "adequate initial inquiry to determine whether the defendant's claim is seemingly substantial." *State v. Happel*, 2010 MT 200, ¶ 14, 357 Mont. 390, 240 P.3d 1016 (internal citations omitted); *see also State v. Weaver*, 276 Mont. 505, 511, 917 P.2d 437, 441 (1996); *City of Billings*, 281 Mont. at 136, 932 P.2d at 1060. A district court conducts an adequate inquiry when it gathers information, *see Gallagher I*, ¶ 22, analyzes the defendant's factual complaints along with counsel's specific responses, *State v. Cheetham*, 2016 MT 151, ¶ 20, 384 Mont. 1, 373 P.3d 45; *Holm*, ¶ 19, and "'ma[kes] some sort of critical analysis at the time the motion was filed,'" *Happel*, ¶ 14 (quoting *State v. Finley*, 276 Mont. 126, 143, 915 P.2d 208, 219 (1996) (*overruled in part on other*

8

*grounds*)). During this initial inquiry, the district court need only inquire as to whether a defendant's claim is seemingly substantial, not whether it is meritorious. *Happel*, ¶ 14 (citing *State v. Gazda*, 2003 MT 350, ¶ 32, 318 Mont. 516, 82 P.3d 20). If a district court's inquiry reveals a seemingly substantial complaint, the court "must hold a hearing to address the validity of the complaints, and appoint separate counsel to represent the defendant." *Happel*, ¶ 14 (citing *Gallagher I*, ¶ 15); *Gazda*, ¶ 32.

¶20 A district court's failure to conduct even a perfunctory inquiry justifies remand for further proceedings. *City of Billings*, 281 Mont. at 136–37, 932 P.2d at 1060–61 (holding the district court's inquiry was inadequate where the court refused to allow the defendant to explain his complaints); *see also Weaver*, 276 Mont. at 511, 917 P.2d at 44.

¶21 In ruling on Schowengerdt's first appeal, we held that the District Court failed to conduct an adequate initial inquiry into Schowengerdt's complaints. Accordingly, we remanded with instructions to the District Court to "adequately inquire into Schowengerdt's complaints about his assigned counsel to determine whether his complaints are seemingly substantial and necessitate a hearing to determine the validity of Schowengerdt's allegations and the need for substitution of counsel." *Schowengerdt*, ¶ 24. This is exactly what the District Court did.

¶22 On appeal, Schowengerdt contends that the District Court's factual findings are clearly erroneous because they are not supported by substantial evidence. Schowengerdt bases this contention on the fact that, although the District Court heard from both Schowengerdt and Scott and made extensive factual findings about Schowengerdt's complaints regarding Scott's performance, "Schowengerdt and Scott never testified under

9

oath, were never subject to cross-examination, and were never called to present evidence on the complaints. Thus, the district court's factual findings in the remand order are merely factual allegations that are unsupported by substantial evidence."

¶23 The District Court conducted an initial inquiry to determine whether Schowengerdt's complaints about his counsel were seemingly substantial and necessitated a hearing on the merits. Schowengerdt, represented by new counsel, presented his complaints to the court, and his counsel succinctly restated the complaints. The District Court determined that Schowengerdt's complaints were "seemingly substantial" and allowed Scott to respond to each of Schowengerdt's specific complaints. After hearing from everybody, the District Court asked Schowengerdt whether he was satisfied with the proceedings and Schowengerdt, through counsel, affirmed that he was satisfied. Schowengerdt's new counsel clarified that Schowengerdt's factual complaints and Scott's specific responses must be analyzed in the context of the original motion for substitution of counsel, *see e.g., Cheetham*, ¶ 20; *Holm*, ¶ 19, and the District Court confirmed it would abide by this analysis, *see Finley*, 276 Mont. at 143, 915 P.2d at 219. There were no further interjections or objections.

¶24 Except in limited circumstances, a defendant's failure to raise an issue before the district court constitutes a waiver that bars the defendant from raising the issue on appeal and prevents us from reviewing the issue on appeal. *State v. Kotwicki*, 2007 MT 17, ¶¶ 8, 22, 335 Mont. 344, 151 P.3d 892 (citing § 46-20-104, MCA); *see also State v. Ashby*, 2008 MT 83, ¶ 22, 342 Mont. 187, 179 P.3d 1164 (explicitly refusing to review an unchallenged condition in light of a defendant's failure to object in district court). However, this Court

may discretionarily review claimed errors that implicate a defendant's constitutional rights or where failing to review the claimed error may result in a "manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the . . . proceedings, or may compromise the integrity of the judicial process." *State v. Baker*, 2000 MT 307, ¶ 12, 302 Mont. 408, 15 P.3d 379 (quoting *Finley*, 276 Mont. at 137, 915 P.2d at 215).

¶25 The principle of effective representation by counsel and the process to inquire as to whether a defendant is receiving effective representation is a fundamental constitutional right. *See Happel*, ¶ 14; *see also State v. Meredith*, 2010 MT 27, ¶ 50, 355 Mont. 148, 226 P.3d 571. However, Schowengerdt fails to show that any fundamental unfairness resulted from the process to which he now objects, or that manifest injustice would result if we affirmed the District Court. *See Baker*, ¶ 12. Schowengerdt does not take issue with the substance of the District Court's findings; he objects to the manner in which the findings were made. But Schowengerdt was aware in advance of the proceeding and what it would entail, and he was provided with another attorney, Smith, to help him prepare and guide him through the process. The record also reflects that the parties discussed in chambers the structure of the proceeding prior to going on the record.

¶26 Schowengerdt now argues that he and Scott should have been put under oath and subject to cross-examination. However, Schowengerdt never objected to the procedure the District Court followed in determining the validity of his allegations. During the proceeding, the District Court invited both parties to state their complaints, to respond, and to raise objections. The District Court asked multiple times whether either party had anything to add and whether both parties were satisfied with the process. Schowengerdt's

11

failure to challenge the proceeding before the District Court constitutes a waiver that bars the defendant from raising the issue on appeal and prevents us from reviewing the issue on appeal. *See Kotwicki*, ¶ 22. Although it may have been preferable that, once the District Court determined Schowengerdt's complaints were seemingly substantial, Schowengerdt and Scott were placed under oath in the subsequent hearing to determine the validity of Schowengerdt's allegations, we will not put a district court in error for conducting a hearing in a manner to which the defendant acquiesced and raised no objection.

¶27 The District Court followed our instructions on remand. The District Court did not err in ruling that Schowengerdt was not entitled to substitution of counsel.

¶28 *Issue Two: Whether Schowengerdt was denied effective assistance of counsel.*

¶29 The Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee criminal defendants the right to effective assistance of counsel. U.S. Const. amend VI; Mont. Const. art. II, § 24; *Gideon v. Wainwright*, 372 U.S. 335, 339–45, 83 S. Ct. 792, 802–06 (1963); *Meredith*, ¶ 50; *Dethman*, ¶ 15.

¶30 A criminal defendant may only raise record-based ineffective assistance of counsel claims on a direct appeal. *State v. Earl*, 2003 MT 158, ¶ 39, 316 Mont. 263, 71 P.3d 1201. A record-based claim is a claim in which counsel's course of action—or failure to act—is fully explained by the record. *State v. White*, 2001 MT 149, ¶¶ 20, 23, 306 Mont. 58, 30 P.3d 340; *Cheetham*, ¶ 14. Here, the District Court's hearing on remand—in which it heard all of Schowengerdt's complaints and Scott's responses to those complaints—sufficiently developed the record such that Schowengerdt's ineffective assistance of counsel claim is properly before us on appeal. *See Cheetham*, ¶ 14; *White*, ¶ 20.

¶31     To prevail on an ineffective assistance of counsel claim, a defendant must show, first, that counsel's performance was deficient—making errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment—and, second, that the deficient performance prejudiced the defendant, in other words, that the errors "were so serious as to deprive the defendant of a fair trial . . . ." *Whitlow*, ¶ 10 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).  When scrutinizing whether counsel was deficient, a court should not analyze the conduct with hindsight; instead, a court should presume that counsel's conduct falls within a range of acceptable professional assistance, and a defendant must overcome that presumption.  *Whitlow*, ¶¶ 15—16.  Further, decisions concerning tactics and strategy based on reasonable professional judgment and thorough investigation should be left to counsel's discretion. *See Whitlow*, ¶¶ 18–19 (citing *Strickland*, 466 U.S. at 689, 690–91, 104 S. Ct. at 2065–66).

¶32     In *United States v. Cronic*, the United States Supreme Court recognized three limited circumstances where prejudice may be presumed:  (1) a complete denial of counsel; (2) if counsel fails entirely to "subject the prosecution's case to meaningful adversarial testing"; and (3) where counsel is called upon to provide assistance under circumstances where competent counsel most likely could not.  466 U.S. 648, 659–62, 104 S. Ct. 2039, 2047–48 (1984); *see also Bell v. Cone*, 535 U.S. 685, 696–97, 122 S. Ct. 1843, 1850–51 (2002) (*overruled on other grounds*).

¶33     In *State v. Jones*, this Court adopted the Ninth Circuit's reasoning in *Frazer v. United States*, 18 F.3d 778, 782, 784 (9th Cir. 1994), and reiterated the narrow circumstances where a presumption of prejudice is warranted.  278 Mont. 121, 134–35,

923 P.2d 560, 567–68 (1996). A presumption of prejudice is warranted when counsel totally abandons the duties of loyalty and confidentially to a client by putting counsel's personal interest ahead of the client and forsakes the adversarial role on behalf of the client, thus essentially joining the prosecution's efforts, or "by an actual conflict of interest." *Jones*, 278 Mont. at 133–35, 923 P.2d at 567–68 (citing *Frazer*, 18 F.3d at 782, 784); *Strickland*, 466 U.S. at 692, 104 S. Ct. at 2068. An actual conflict exists where a defense attorney "is required to make a choice advancing another client's interests to the detriment of his client's interest." *State v. Deschon*, 2002 MT 16, ¶ 18, 308 Mont. 175, 40 P.3d 391; *see also Finley*, 276 Mont. at 144, 915 P.2d at 219–20 (holding that a defendant is entitled to a presumption of prejudice where defendant can show that "counsel actively represented conflicting interests, and . . . that an actual conflict of interests adversely affected counsel's performance"); *State v. St. Dennis*, 2010 MT 229, ¶¶ 29, 32, 358 Mont. 88, 244 P.3d 292; *Thurston v. State*, 2004 MT 142, ¶ 17, 321 Mont. 411, 91 P.3d 1259; *State v. Christenson*, 250 Mont. 351, 355, 820 P.2d 1303, 1306 (1991).

¶34 Counsel's duty of loyalty and confidentiality is balanced with counsel's role as an officer of the court and is therefore limited by the duty to comply with law and the rules of professional conduct. *See Nix v. Whiteside*, 475 U.S. 157, 168, 106 S. Ct. 988, 994–95 (1986). This obligation is embodied, in part, in the Montana Rules of Professional Conduct, which require the duty of candor to the tribunal: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein: (1) without having first determined through diligent investigation that there is a bona fide basis in law for the position to be advocated." M. R. Pro. Cond. 3.1(a). Counsel's duty of confidentiality

extends to a client's guilty plea but does not require counsel to "assist the client in presenting false evidence." *Jones*, 278 Mont. at 128, 923 P.2d at 564 (citing *Whiteside*, 475 U.S. at 166, 174, 106 S. Ct. at 994, 998 (analyzed in the context of counsel's attempts to prevent a client's perjury).

¶35 In *Jones*, we held that counsel violated his duty of confidentiality, and totally abandoned the "duties of loyalties and confidentiality" to his client such that a presumption of prejudice was warranted, when counsel attempted to withdraw in advance of trial after a disagreement with his client, who was committed to going to trial instead of taking a guilty plea. *Jones*, 278 Mont. at 124, 133–34, 923 at 562, 567–68. Before the court, defense counsel openly disagreed with and undermined his client's choice to proceed to trial, calling it "repugnant." *Jones*, 278 Mont. at 124, 131–32, 923 P.2d at 562, 566–68. Further, counsel revealed confidential client information, representing to the court that, "my client has admitted to me, essentially, that he did it," and deemed the case "open and shut," essentially joining the State's efforts to convict the defendant. *Jones*, 278 Mont. at 124, 131–33, 923 P.2d at 561, 566–68 (internal citations omitted).

¶36 We also held that counsel breached the duty of loyalty and abandoned his client when a district court, following defendant's allegations, allowed defense counsel to take the stand and "rebut" the defendant's allegations at a post-trial hearing considering a defendant's complaints of ineffective assistance of counsel. *Finley*, 276 Mont. at 145, 915 P.2d at 220. We reasoned that the defendant was "without counsel at this point in the proceedings because his own attorney testified against him." *Finley*, 276 Mont. at 145, 915 P.2d at 220.

15

¶37 We first analyze whether Schowengerdt is entitled to a presumption of prejudice. Schowengerdt argues that he is entitled to a p resumption of prejudice because Scott violated the duty of loyalty and confidentiality by (1) effectively abandoning Schowengerdt during a critical stage of the proceedings when Scott filed the Motion to Withdraw the Guilty Plea and, during the hearing that followed, argued that there was no law to support the plea withdrawal, and (2) by creating a conflict of interest in continuing representation and disclosing confidential communication. We disagree.

¶38 First, in advance of writing the Motion to Withdraw Guilty Plea, Scott met with Schowengerdt and discussed strategy and risks on several occasions. Scott made arrangements to improve and ensure communication with his client, and he followed Schowengerdt's instructions and proposed course of action; however, he reserved tactical details to himself. *See Whitlow*, ¶¶ 18–19.

¶39 Schowengerdt attempts to analogize his situation to the criminal defendant in *Finley*. However, the present case is distinguishable in several ways. First, during the process leading up to filing the Motion to Withdraw Guilty Plea, Schowengerdt and Scott worked together and proceeded with a defense in accordance with Schowengerdt's wishes. Second, Scott did not, as Schowengerdt states, "argue[] against the motion in the supporting brief" such that Schowengerdt was basically without counsel during the proceeding. Scott did not take the stand and rebut Schowengerdt's claims or testify against him. Instead, Scott stated "all I have is that Mr. Schowengerdt has asked me to file the motion to withdraw his guilty plea." Following a somewhat impromptu voluntary guilty plea by Schowengerdt, Scott was left with little to rely upon when he, at the behest of his

16

client, moved to withdraw the plea. Scott presented the court with the only arguments available to him.

¶40 Also, unlike the counsel in *Jones*, Scott never expressed any belief or speculation regarding Schowengerdt's innocence or guilt, either in his Motion to Withdraw Guilty Plea or at the hearing. *See Jones*, 278 Mont. at 131–32, 923 P.2d at 566-67. Scott also did not openly denigrate Schowengerdt's choice to attempt a plea withdrawal. *See Jones*, 278 Mont. at 124, 131–32, 923 P.2d at 562, 566–68. Scott merely provided the District Court with the required showing of good cause rationale and balanced his duty as an advocate and officer of the court. *See e.g.*, M. R. Pro. Cond. 3.1(a); § 46-16-105(2), MCA; *see also State v. Schoonover*, 1999 MT 7, ¶¶ 10–11, 293 Mont. 54, 973 P.2d 230 (considering the following factors when examining whether to grant or deny a defendant's motion to withdraw a guilty plea: (1) adequacy of court's interrogation at the time of the plea; (2) promptness with which a defendant attempts to withdraw the plea; and (3) if the plea was part of a bargain or given in exchange for dismissal of other charges).

¶41 While Schowengerdt alleges that leading up to the change of plea, he was not prepared to plead guilty and alleges Scott and his investigator recommended that Schowengerdt "hurry up" and sign "this piece of paper," Scott disputes this version of events. Scott alleges it was Schowengerdt who told him, "let's just plead." Further, Schowengerdt alleges that he did not understand the hearing procedures, laboring for two years under the misapprehension that he had been to trial, not that he had entered a guilty plea with the court. This, despite the fact that Schowengerdt twice stated that he did not

want to go to trial because he could not "handle it," and was therefore pleading guilty. We conclude that Scott did not abandon Schowengerdt at a critical stage in the proceedings.

¶42 Scott also did not create a conflict of interest or reveal any confidential client communications, aside from the purported rationale for the motion to withdraw the guilty plea as is required by law. *See Jones*, 278 Mont. at 131–32, 923 P.2d at 566; *see* § 46-16-105(2), MCA. In his Motion to Withdraw Schowengerdt's Guilty Plea, Scott stated it was his "duty as a licensed attorney in Montana to point out the Court there is not any case law in Montana to support Mr. Schowengerdt's position as to the withdraw[al] of plea." *See* M. R. Pro. Cond. 3.3. While the lack of case law in support of Schowengerdt's motion was probably evident from the contents of the motion and likely obviated the need for such a representation, the representation did not create a conflict of interest or otherwise violate Scott's duty of loyalty to his client.

¶43 During the hearing to determine the Motion to Withdraw Guilty Plea, when invited by the District Court to speak, Schowengerdt added no substantive justification for his plea withdrawal. Schowengerdt described that he felt unprepared to address his withdrawal of plea but stated, "I don't think I'm guilty. . . . I know what the outcome was, but I think I was fighting for my life." The District Court denied the Motion to Withdraw the Guilty Plea, concluding that Schowengerdt had not "in any way asserted his plea of guilty was involuntary and there is no basis in the record to conclude [his] guilty plea was involuntary."

¶44 Schowengerdt also argues that his ineffective assistance claim based on involuntariness created a conflict of interest for Scott when he filed and defended the

18

Motion to Withdraw Schowengerdt's Guilty Plea. Following this logic, the narrow exception carved out for assuming prejudice would swallow the rule. Schowengerdt would have this Court afford a presumption of prejudice in any case where a complaint was raised against an attorney and that attorney continued to represent the criminal defendant. While it is true that ineffective assistance can render a plea involuntary and provide good cause for plea withdrawal, *see State v. Henderson*, 2004 MT 173, ¶¶ 7–8, 17, 322 Mont. 69, 96 P.3d 1231; *State v. Lawrence*, 2001 MT 299, ¶¶ 12–16, 307 Mont. 487, 38 P.3d 809, we agree with the District Court's determination that Schowengerdt's plea was voluntarily and intelligently made.

¶45 Nothing in the record shows that Scott placed his own interests, or those of the State, before Schowengerdt's when he attempted to withdraw Schowengerdt's plea. Neither does the record indicate that Scott chose an avenue advancing or protecting himself over Schowengerdt's interests, nor that such imagined choice worked to Schowengerdt's detriment. *See Christenson*, 250 Mont. at 355, 820 P.2d at 1306. Though perhaps poorly expressed, when Scott told the District Court that he thought Schowengerdt suffered from "buyer's remorse," Scott did not have any personal interest or stake in the outcome of the case, and he continued to represent Schowengerdt to the best of his abilities. *See Christenson*, 250 Mont. at 355, 820 P.2d at 1306.

¶46 Scott did not violate his duty of loyalty and did not have an actual conflict of interest. *See Christenson*, 250 Mont. at 355, 820 P.2d at 1306. Schowengerdt failed to show a conflict of interest or abandonment such that a presumption of prejudice is warranted. Nothing in the record shows that Schowengerdt is entitled to a presumption of prejudice;

and because a defendant must prove both prejudice and that counsel's performance was deficient, *see Christenson*, 250 Mont. at 355, 820 P.2d at 1306, the District Court did not err in denying Schowengerdt's motion for substitution of counsel.

¶47 Finally, a lack of communication between appointed counsel and a defendant is not, on its own, a basis for reversal on grounds of ineffective assistance. *State v. Long*, 206 Mont. 40, 46, 669 P.2d 1068, 1072 (1983). The district court should appoint new counsel if the defendant can show with material facts that there is a total lack of communication. *State v. Zackuse*, 250 Mont. 385, 385–86, 833 P.2d 142, 142 (1991); *State v. Martz*, 233 Mont. 136, 139–40, 760 P.2d 65, 67 (1988); *see Gallagher I*, ¶¶ 23–26 (remanding for a determination of whether a defendant was entitled to new counsel after he communicated to the court that his relationship with appointed counsel deteriorated into a total lack of communication and that he and counsel were at an "impasse with respect to the proper course of action in his case"). However, bare allegations are insufficient. *Zackuse*, 250 Mont. at 385–86, 833 P.2d at 142.

¶48 Here, the record does not a show a total breakdown in communication. *See Long*, 206 Mont. at 44–46, 669 P.2d at 1071–72. The record, on remand, does show a disagreement between Schowengerdt and Scott regarding investigation tactics and the merits of certain strategies, but the record also shows that Scott attempted to accommodate Schowengerdt's requests and continued to advise Schowengerdt. Further, unlike the client and counsel in *Gallagher I*, Schowengerdt wanted to plead guilty and Scott enabled this decision following lengthy discussions with his client. *See Gallagher I*, ¶ 23. Scott entered the guilty plea at Schowengerdt's request and attempted to withdraw it at Schowengerdt's

20

behest. While Schowengerdt points to specific points of potential disagreement between Scott and himself, *see Gallagher I*, ¶¶ 23–24, the record shows an ongoing relationship between counsel and client.

¶49 Schowengerdt was not denied effective assistance of counsel. The District Court did not err when it inquired into the complaints of ineffective assistance of counsel and explicitly concluded Schowengerdt was effectively represented and denied his request for substitution of counsel.

## CONCLUSION

¶50 As directed, the District Court inquired into Schowengerdt's complaints about assigned counsel to determine whether the complaints were seemingly substantial and warranted a hearing. The District Court conducted a hearing at which it heard from both Schowengerdt and Scott, and made extensive findings based on that hearing. Although Schowengerdt complains now about the manner in which the District Court conducted the hearing, he made no objection at the time, nor does he take issue with the substance of the District Court's findings. Schowengerdt was not denied effective assistance of counsel, and the District Court's Order denying his request for new counsel is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

21