No. 91-134

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs-

DAVID JAMES CHRISTENSON,

      Defendant and Appellant.

FILED

NOV 19 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Edward G. Beaudette, Knight, Dahood, McLean &
            Everett, Anaconda, Montana.

      For Respondent:

            Hon. Marc Racicot, Attorney General, Helena,
            Montana; Barbara Harris, Assistant Attorney
            General, Helena, Montana; Robert L. Deschamps,
            County Attorney, Missoula, Montana.

                        Submitted on briefs: August 1, 1991

                          Decided: November 19, 1991

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The defendant, David James Christenson, appeals his convictions of criminal possession of cocaine, criminal possession of methamphetamine and criminal possession of dangerous drug paraphernalia following a jury trial in the District Court of the Fourth Judicial District, Missoula County. We affirm.

The defendant raises the following issues:

**1.** Was the defendant denied effective assistance of counsel arising from a conflict of interest of trial counsel?

2. Was the defendant denied effective assistance of counsel as a result of trial counsel's stipulation to the admission of a videotape of the crime scene into evidence?

**3.** Did the District Court err by allowing the jury to view the videotape during deliberations?

On September 5, **1989,** a search warrant was executed at 911 Charlo, Missoula, Montana, by members of the Missoula County Sheriff's Department, the Missoula City Police Department and the Montana Criminal Investigation Bureau. The defendant answered the door to the residence and, upon entry, officers found Robert L. Peterson exiting one of the bedrooms. By checking identification and paperwork in the two bedrooms of the residence, officers established that one bedroom was occupied by the defendant and the other was occupied by Peterson.

Both the defendant and Peterson were arrested and transported to jail shortly after officers arrived. The officers continued their search of the residence and, as they conducted their search,

2

a videotape was made of the items found and the rooms in which they were found.

In the bedroom occupied by the defendant, officers found the defendant's wallet, including his driver's license, and an envelope and numerous prescription pill bottles with his name on them. On top of the dresser, in plain view, Detective Larry Jacobs found a plastic bag containing white powder residue which was later identified as cocaine. In plain view on another dresser, Detective Jacobs found a spoon with white powder on it which was later identified as methamphetamine. Detective Jacobs also found a pipe in a dresser drawer. Cannabinol, a substance contained in marijuana, later was determined to be in the residues in the pipe. Detective Jacobs also found thirteen bindles, or folded paper containers, in the dresser. Three of the bindles contained methamphetamine. Numerous other items were found in the defendant's and Peterson's bedrooms, including additional dangerous drugs, scales, a police scanner and loaded weapons.

On September 12, 1989, the defendant was charged by information with criminal possession of valium, criminal possession of methamphetamine with intent to sell, and criminal possession of dangerous drug paraphernalia. An amended information was filed on June 1, 1990, charging the defendant with criminal possession of cocaine, criminal possession of methamphetamine with intent to sell and criminal possession of dangerous drug paraphernalia.

A jury trial was held on October 29 through 31, 1990 on the charges stated in the amended information. During trial, the

3

defendant's trial counsel, William Dee Morris, stipulated to the admission of the videotape into evidence with the provision that it be played without sound. After the jury began its deliberations, it requested a video cassette recorder in order to view the videotape. The court allowed the jury to view the videotape without volume in the jury room.

On October 31, 1990, the jury found the defendant guilty of criminal possession of cocaine, a lesser included offense of criminal possession of methamphetamine, and criminal possession of dangerous drug paraphernalia. Following trial, the defendant retained new counsel. The defendant was sentenced on December 6, 1990 to five years imprisonment in the Montana State Prison on the first two counts and to six months in the Missoula County Jail on the third count. The sentences on the first and third counts are to run concurrently: the sentence on the second count is to run consecutively and was suspended on certain terms and conditions. The defendant appeals his convictions.

**I**

Was the defendant denied effective assistance of counsel arising from a conflict of interest of trial counsel?

The Sixth Amendment guarantee of effective assistance of counsel is comprised of two correlative rights. The first is the right to counsel of reasonable competence. McMann v. Richardson (1970), 397 U.S. 759, 770-71, 90 S.Ct. 1441, 1448-49, 25 L.Ed.2d 763, 773. The second is the right to counsel's undivided loyalty. Wood v. Georgia (1981), 450 U.S. 261, 271-72, 101 S.Ct. 1097, 1103-

4

04, 67 L.Ed.2d 220, 230.

The United States Supreme Court has articulated several standards by which to determine whether these rights have been violated. General claims of ineffective assistance of counsel involving challenges to counsel's competency or performance are reviewed under the two-pronged test articulated in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. However, in cases raising claims of ineffective assistance of counsel due to conflicts of interest, the Strickland Court retained the standard articulated in Cuyler v. Sullivan (1980), 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333. Under Cuyler, a defendant must show: (1) that counsel actively represented conflicting interests, and (2) that an actual conflict of interest adversely affected counsel's performance. Cuyler, 446 U.S. at 350.

Where an ineffective assistance of counsel claim is based on an alleged conflict of interest, rather than a lack of reasonable competence, prejudice is presumed if the defendant satisfies both prongs of the Cuyler test. Strickland, 466 U.S. at 692. In such a situation, the presumption of prejudice is warranted because the duty of loyalty, "perhaps the most basic of counsel's duties," is breached and "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." Strickland, 466 U.S. at 692. Although Cuyler involved a conflict of interest between clients, the presumption of prejudice extends to conflicts between the client and his or her counsel's personal interests. Mannhalt v. Reed (9th Cir. 1988), 847 F.2d 576, 580.

5

**A** short time after the defendant's convictions in the District Court, his trial counsel, William Dee Morris, was charged by federal authorities with conspiracy to manufacture and distribute methamphetamine, income tax fraud arising from the sale of methamphetamine and other associated criminal activity. The defendant contends that because of Morris' "apparent participation in the use, manufacture and distribution of methamphetamine at the same time" he was representing the defendant, the first prong of the Cuvler test is satisfied because an actual conflict of interest existed. The defendant cites Mannhalt, in which the Ninth Circuit Court of Appeals held that an actual conflict of interest exists when an attorney is accused of crimes similar or related to those of his client, in support of his argument. Mannhalt, 847 F.2d at 581.

The defendant asserts that the second prong of the Cuvler test can be presumed from the overall lack of aggressiveness shown by trial counsel in cross-examination and in counsel's failure to establish critical facts in presentation of the defense. He argues that a reading of the transcript demonstrates the lack of a coherent defense strategy and an avoidance of inquiry into issues such as Robert Peterson's source for the methamphetamine which he testified he brought into the defendant's residence.

In Mannhalt, the defendant, Guenter Mannhalt, was tried on charges of conspiracy to commit robbery, robbery, attempted robbery, and possession of stolen property. Before trial, a witness for the prosecution told police officers that Mannhalt's

6

trial counsel had purchased stolen property. Counsel became aware of this accusation while preparing for Mannhalt's trial and, although he discussed the accusation with Mannhalt, he did not point out a potential conflict of interest. Counsel then represented Mannhalt at trial and Mannhalt was convicted. In Mannhalt's claim for federal habeas corpus relief, the Ninth Circuit Court of Appeals held that the first prong of the Cuvler test was satisfied, stating:

> We find that when an attorney is accused of crimes similar or related to those of his client, an actual conflict exists because the potential for diminished effectiveness in representation is so great. For example, a vigorous defense might uncover evidence of the attorney's own crimes, and the attorney could not give unbiased advice to his client about whether to testify or whether to accept a guilty plea.

Mannhalt, 847 F.2d at 581.

In this case, the defendant relies solely on the fact that shortly after his convictions in District Court, his trial counsel was charged by federal authorities with similar criminal offenses. Although the defendant asserts that Morris' participation in drug-related offenses during the time of Morris' representation is apparent, he does not allege that a conflict of interest existed because the basis of the federal charges were acts committed by Morris during Morris' representation or that Morris was under investigation by federal authorities during Morris' representation of him. In Mannhalt, trial counsel's personal interests were conclusively shown to be at odds with those of the defendant during the time of his representation of the defendant because he was accused of a crime similar or related to those of the defendant

7

during that time. Therefore, an actual conflict of interest existed. However, we do not read Mannhalt to imply that an actual conflict of interest exists where the only basis for the alleged conflict is a similar but unrelated charge against trial counsel occurring after the defendant was tried and convicted. In such a situation, whether counsel actually represented conflicting interests is left to speculation. At best, a "possibility" of a conflict of interest exists which "is insufficient to impugn a criminal conviction." Cuvler, 446 U.S. at 350. We are not convinced that an actual conflict existed in this case between the defendant and his trial counsel.

Even assuming arguendo that an actual conflict of interest existed between trial counsel and the defendant, the defendant cannot establish that the actual conflict of interest adversely affected trial counsel's performance under the second prong of the Cuvler test. Nothing in the record suggests that Morris' method of cross-examination or his defense strategy was in any way motivated by a desire to protect his own personal interests at the defendant's expense. In addition, Morris' defense strategy at trial was to show that the defendant had invited Robert Peterson to stay with him at his residence while Peterson was experiencing marital difficulties, and that the defendant was unaware of the fact that Peterson had brought the drugs and related paraphernalia into the residence. Peterson's own testimony supported that claim. The State offered two witnesses, Detective Jacobs, who participated in the arrest of the defendant and the search of his residence, and

Judith Hoffmann, a forensic scientist at the Montana State Criminal Laboratory, who examined and analyzed evidence seized from the defendant's residence. Much of their testimony concerned the drugs and related paraphernalia which was found and the locations within the residence in which they were found, all of which was damaging to the defendant. In light of the State's evidence, trial counsel's decision not to conduct extensive cross-examination was a tactical decision within his discretion. Extensive cross-examination would have run the risk of eliciting cumulative or additional damaging testimony, further harming the defendant's case. Given trial counsel's defense strategy, we see no reason why Peterson's source of methamphetamine was critical to the defendant's case in any way, and the defendant has failed to demonstrate otherwise.

We conclude that trial counsel's performance was not adversely affected by an actual conflict of interest and, thus, the defendant was not denied effective assistance of counsel under the standard set forth by the United States Supreme Court in Cuyler.

II

Was the defendant denied effective assistance of counsel as a result of trial counsel's stipulation to the admission of the videotape of the crime scene into evidence?

The defendant maintains that he received ineffective assistance of counsel in that trial counsel failed to vigorously and competently oppose the admission of the videotape into

9

evidence. In evaluating general claims of ineffective assistance of counsel, this Court utilizes the two-pronged test set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, counsel's performance must be deficient. To assess deficient performance, this Court employs the "'reasonably effective assistance' test of whether a defendant's counsel acted within the range of competence demanded of attorneys in criminal cases. [Citation omitted.]'' State v. Elliott (1986), 221 Mont. 174, 178, 717 P.2d 572, 575. Second, counsel's deficient performance must have so prejudiced the defendant as to deprive the defendant of a fair trial. State v. Leavens (1986), 222 Mont. 473, 475, 723 P.2d 236, 237. The standard for evaluating prejudice is whether a reasonable probability exists that but for counsel's deficient performance, the trial's outcome would have been different. Leavens, 222 Mont. at 475, 723 P.2d at 237.

In this case, the testimony of Detective Jacobs was used as foundation for the admission of the videotape into evidence. The defendant claims that the videotape was inadmissible because its "authenticity or correctness'' was not established in that Detective Jacobs' statement that the videotape was made during the search of the premises is false. He states that "[t]he tape itself clearly establishes that the videotaping was not of the search in progress but rather a documentation of the search results after the initial discovery of what was purported to be evidence of crime." The defendant contends that the videotape does not show the condition of the premises before the search began and that it does not

10

accurately depict the circumstances of the search because it does not actually show the search in progress. The defendant argues that the prejudice he suffered is evident by the fact that the jury requested and was allowed to view the videotape during deliberations.

Under Rule 901(a), M.R.Evid., the requirement of authentication or identification is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." In addition, the trial court judge has wide discretion in determining the adequacy of foundation for the admission of evidence. City of Missoula v. Forest (1989), 236 Mont. 129, 134, 769 P.2d 699, 702.

The record reflects that the videotape at issue shows the defendant's residence in Missoula. More specifically, the bedrooms occupied by the defendant and Robert Peterson are shown at length; in addition, items of personal identification, dangerous drugs, drug paraphernalia, money, and weapons are displayed, some after they were moved by officers and others both before and after they were moved. However, the defendant's argument that the videotape's authenticity could not be established overlooks Detective Jacobs' testimony as to how and when the videotape was made. Detective Jacobs testified that the videotape shows him searching the defendant's bedroom; the videotape also shows items in the other bedroom because other officers in the search had the video camera operator move at various times to the other bedroom and tape items that they had found while Detective Jacobs continued his search.

To be authentic, the videotape in this case did not have to be filmed in a certain way or at a certain time. Neither the State nor Detective Jacobs asserted that the videotape showed the search in a step-by-step manner but rather asserted that the videotape documented items found in the residence. Given the purpose for which it was offered, the videotape was properly authenticated. In addition, the defendant's concern that the videotape did not fully show the premises prior to, during, and after the search goes to the weight of the evidence, which is in the exclusive province of the jury, and not to its admissibility. See State v. Armstrong (1980), 189 Mont. 407, 616 P.2d 341; State v. Laverdure (1990), 241 Mont. 135, 785 P.2d 718.

We also disagree with the defendant's assertion that the videotape was unduly prejudicial and, therefore, should have not been admitted into evidence. Because the videotape was shown to the jury without sound there was no verbal testimony by any person, only a view of the items later introduced at trial as evidence of the crimes charged. Thus, any possible prejudicial effect of the videotape was minimal. The videotape was probative to the issues involved in the case in that it served to corroborate and illustrate Detective Jacobs' testimony. The videotape was properly admitted into evidence.

Not only has the defendant failed to show that trial counsel's performance was deficient, he has also failed to show that but for the admission of the videotape into evidence a reasonable probability exists that the outcome of the trial would have been

12

different. There was substantial evidence, including the items of evidence and their locations in the residence as established by testimony at trial, of the defendant's possession of dangerous drugs and related paraphernalia. We hold that the defendant was not denied effective assistance of counsel as a result of trial counsel's stipulation to the admission of the videotape into evidence.

## III

Did the District Court err by allowing the jury to review the videotape during deliberations?

The defendant asserts that he was prejudiced by the District Court allowing the videotape to be viewed by the jury during its deliberations. He argues that the videotape was unreliable and contained prejudicial information which was emphasized by the jury's opportunity to view the videotape again. In addition, citing People v. Montoya (Colo. App. 1989), 773 P.2d 623, the defendant contends that the videotape was testimonial in nature and argues that the jury was allowed to give undue weight to this testimonial evidence.

Section 46-16-504, MCA (1989), in effect at the time of the defendant's trial, states:

> Upon retiring for deliberation, the jury may take with them all papers which have been received as evidence in the cause, except depositions or copies of such papers as ought not, in the opinion of the court, to be taken from the person having them in his possession. The jury may also take with them any exhibits which the court may deem proper and notes of the proceedings taken by themselves. [Emphasis added.]

In State v. Morse (1987), 229 Mont. 222, 233, 746 P.2d 108, 115, we

13

found no error in allowing the jury to take audio tapes into the jury room, stating that "[j]ust as with papers which have been properly admitted into evidence that are allowed in the jury room during deliberations, the tapes were evidence which at the discretion of the court could be allowed." Here, we have already concluded that the videotape was properly admitted into evidence. Having been properly admitted, the videotape was evidence which, at the discretion of the court, could be viewed by the jury during deliberations.

We also note that Montova, cited by the defendant, is not applicable to the present case. Montova involved a videotaped statement to police given by a witness to a robbery. Analogizing the videotaped statement to a deposition, the Colorado Court of Appeals held that the trial court committed prejudicial error in allowing the jurors unrestricted, unsupervised access to the videotape during their deliberations, stating:

> [B]ecause jurors may give undue weight to the testimony contained within a deposition which they take with them and may not accord adequate consideration to controverting testimony received from live witnesses, it is the universal rule that depositions may not be reviewed by a jury on an unsupervised basis. [Citations omitted.]
>
> . . .
>
> For these reasons, we conclude that a trial court may allow jurors to review a videotape of a witness' previous statements, which has been admitted for substantive purposes, only under circumstances that will assure that such statements are not given "undue weight or emphasis." [Citation omitted.]

Montova, 773 P.2d at 625-26. In the present case, the videotape of the crime scene documenting the evidence seized was played to the

jury without a sound track. **As** such, the videotape is analogous to a photograph or series of photographs. It is not akin to deposition testimony or other testimonial evidence which carries with it those dangers recited by the court in <u>Montova</u>. We conclude that the District Court did not abuse its discretion when it allowed the jury to review the videotape during deliberations.

    **Aff**irmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

15

November 19, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Edward G. Beaudette
KNIGHT, DAHOOD, McLEAN & EVERETT
P.O. Box 727
Anaconda, MT  59711

Hon. Marc Racicot, Attorney General
Barbara Harris, Asst. Atty. Gen.
Justice Building
Helena, MT  59620

Robert L. Deschamps, III
Missoula County Attorney
200 West Broadway
Missoula, MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
      Deputy