FILED

03/10/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0323

DA 25-0323

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 47

KEVIN ANTHONY BRIGGS,

     Petitioner and Appellant,

  v.

STATE OF MONTANA,

     Respondent and Appellee.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-20-558B
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

       Kevin Anthony Briggs, Self-Represented, Deer Lodge, Montana

     For Appellee:

       Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

       Audrey Cromwell, Gallatin County Attorney, Eric N. Kitzmiller, Special Deputy County Attorney, Helena, Montana

Submitted on Briefs:  January 14, 2026

Decided:  March 10, 2026

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1    Kevin Anthony Briggs appeals the Gallatin County District Court's April 2025 denial of postconviction relief. We address the following restated issues:

> 1. *Whether Briggs' trial counsel was constitutionally ineffective for seeking withdrawal from representation but retaining payments under the parties' fixed-fee contract.*
>
> 2. *Whether appellate counsel was constitutionally ineffective for failing to argue that the trial court erred in not appointing separate counsel to represent Briggs at the withdrawal hearing.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    The events underlying Briggs' 2018 jury conviction on the offenses of aggravated assault, sexual assault, assault on a peace officer, escape, and criminal possession of dangerous drugs are described in *State v. Briggs*, 2018 MT 261N, 394 Mont. 387, 429 P.3d 275, *cert. denied Briggs v. Montana*, 587 U.S. 992, 139 S. Ct. 2024 (2019), where we affirmed Briggs' conviction.[1] This appeal arises out of postconviction proceedings involving allegations of ineffective assistance of counsel, specifically, retained trial counsel who represented Briggs from March 2014 through January 2015, and retained counsel who represented him on appeal.

¶3    In March 2014, after initially appearing with court-appointed counsel, Briggs retained Chuck Watson (Watson), Ashley Whipple, and Todd Whipple (collectively, retained trial counsel) to represent him. He and his grandmother executed a "fixed fee contract" wherein Briggs agreed to pay counsel $150,000—$100,000 for legal services

---

[1] *See also State v. Briggs*, Order Denying Petition for Rehearing, No. DA 16-0157 (Dec. 4, 2018).

($65,000 to Watson and $35,000 to the Whipples) and $50,000 for expenses. Briggs' grandmother paid the $150,000 fee upfront.

¶4 Ten months later, on January 13, 2015, retained trial counsel sent Briggs a letter stating their intent to seek withdrawal from representation due to a complete breakdown in the attorney-client relationship. Two days later, counsel filed a motion to withdraw asking the court to refer the matter to a different judge to "preserve neutrality." The next day, Briggs sent a letter to the court complaining of counsels' conduct and then filed several pro se motions over the following days. The court eventually ordered Briggs to respond to counsels' motion, which he did, formally objecting to their withdrawal on January 23, 2015. The trial judge set a hearing on the motion before a different judge.

¶5 At the January 26, 2015 hearing on retained trial counsels' motion to withdraw, Watson brought outside counsel who questioned him about his reasons for wanting to withdraw from representation.[2] Despite the presence of outside counsel and Briggs' insistence he was unrepresented at the hearing, Watson said that retained trial counsel were still Briggs' attorneys and knew how to discharge their obligations to him. Watson explained that counsels' relationship with Briggs had deteriorated to the point where they were in a stand-off, with no way to represent Briggs effectively any longer. Though Briggs challenged some of Watson's assertions, he agreed there was a breakdown in communication between him and retained trial counsel. Notwithstanding, Briggs' main

---

[2] Outside counsel did not question Briggs during the hearing. Watson explained that co-counsel was present to help protect privilege, which Briggs had not waived, in an overabundance of caution to avoid a disclosure like in *State v. Jones*, 278 Mont. 121, 923 P.2d 560 (1996).

concerns were possible trial delay and losing the money his grandmother had paid. But, when asked point-blank by the court whether he thought counsel could successfully defend him against the felony charges, Briggs answered that he was not confident in counsels' ability to represent him.

¶6    The judge who presided over the hearing on the motion issued an immediate order recommending that retained trial counsel be permitted to withdraw due to a complete breakdown in the attorney-client relationship. Later that same day, at a scheduled pretrial hearing, the trial judge granted retained trial counsels' motion to withdraw and ordered that Briggs, who said he could not afford counsel at that time, be appointed counsel. Two days later, two court-appointed attorneys appeared to represent Briggs, and a third assigned attorney appeared a little over one month after that; all three attorneys took Briggs through his July-August 2015 jury trial, post-judgment proceedings, and January 2016 sentencing.

¶7    Briggs later appealed his conviction, through retained appellate counsel, claiming a violation of his speedy trial right, erroneous denial of discovery of officer personnel records, erroneous denial of sanctions for the State's loss of evidence, and ineffective assistance of court-appointed trial counsel for failing to object to portions of the State's cross-examination and closing argument. We affirmed the trial court on all Briggs' claims of error and held that Briggs failed to prove ineffective assistance of counsel (IAC). Briggs petitioned the United States Supreme Court for a writ of certiorari, which the high court denied in May 2019.

**2020-2024 Postconviction Proceedings**

¶8      In May 2020, Briggs, through counsel, petitioned for postconviction relief (PCR) on various grounds, including trial court error and IAC.  The District Court ordered responses from the State and counsel Briggs identified in his IAC claims.  The State denied that Briggs was entitled to postconviction relief because his claims were either procedurally barred or not proper PCR claims.  Over the next almost four years, the parties litigated various discovery and evidentiary matters.  Eventually, the court set the PCR matter for a bench trial and ordered Briggs to file his amended petition by October 2024.

¶9      In October 2024, Briggs, through counsel, filed a 140-page amended PCR petition, the subject of this appeal.  Briggs reasserted and added new claims of trial court error, trial counsel IAC, and appellate counsel IAC.  The State again answered that Briggs was not entitled to PCR on any of his asserted grounds.  The District Court held a two-day hearing on January 23-24, 2025, during which Briggs, his retained trial counsel, his court-appointed counsel, his appellate counsel, and other witnesses testified.  In April 2025, the court issued its 72-page Findings of Fact, Conclusions of Law, and Order denying postconviction relief.  Briggs timely appealed pro se.[3]

**Briggs' Claims of Error on Appeal**

¶10     In proceedings below, Briggs asserted no less than 15 grounds for postconviction relief.  The District Court resolved all Briggs' asserted claims.  However, Briggs raises only two issues on appeal, as discussed below.  Accordingly, to resolve his appeal, we

---

[3] Though Briggs was initially represented on appeal, PCR counsel sought and obtained unopposed leave to withdraw because Briggs wanted to proceed pro se.

address only the claims of error that Briggs has maintained and do not address any other claims that he could have, but did not, raise here.

¶11 Briggs contends that his retained trial counsel was constitutionally ineffective, though his reasons are somewhat convoluted. Essentially, Briggs claims that the parties' fixed-fee contract created a conflict between counsels' interests in retaining payments, made in full in advance, and Briggs' interests in being able to hire replacement counsel with that money. Briggs further contends that counsels' conflicted financial interests caused them to "fail to function in any meaningful sense" as his advocates in the "time period surrounding" withdrawal. Under *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984), and *State v. Jones*, 278 Mont. 121, 923 P.2d 560 (1996), these circumstances were presumptively prejudicial, warranting reversal. Alternatively, Briggs argues that his retained trial counsel was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

¶12 Briggs also claims that his appellate counsel was constitutionally ineffective for not arguing that the trial court's failure to appoint counsel at the withdrawal hearing was reversible error. Briggs argues that, like in *State v. Finley*, 276 Mont. 126, 915 P.2d 208 (1996), his retained trial counsels' seeking withdrawal was adversarial to his interests and that the hearing was a "critical stage" of proceedings because his rights to "hire counsel of his choosing" and "use lawfully owned property to pay for an attorney" were at stake.[4]

---

[4] Briggs also contends that his speedy trial right was implicated at the withdrawal hearing but only reargues that permitting withdrawal caused prejudice which the trial court incorrectly attributed to him and not the State in its speedy trial analysis. The District Court correctly determined that,

Therefore, Briggs contends the trial court erred in not appointing counsel to protect those rights.[5] Because appellate counsel did not raise this error during his direct appeal, counsel was constitutionally ineffective.

¶13 The State answers that the District Court correctly denied postconviction relief because neither Briggs' retained trial counsel nor appellate counsel was constitutionally ineffective. We agree and affirm the District Court.

## STANDARD OF REVIEW

¶14 We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Hammer v. State*, 2008 MT 342, ¶ 9, 346 Mont. 279, 194 P.3d 699. Ineffective assistance of counsel claims involve mixed questions of law and fact that we review de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861. A postconviction petitioner bears a heavy burden in seeking to overturn a district court's denial of postconviction relief based on ineffective assistance of counsel claims. *Baca v. State*, 2008 MT 371, ¶ 16, 346 Mont. 474, 197 P.3d 948; *Whitlow*, ¶ 21.

## DISCUSSION

¶15 *1. Whether Briggs' trial counsel was constitutionally ineffective for seeking withdrawal from representation but retaining payments under the parties' fixed-fee contract.*

---

because we already decided the speedy trial issue on Briggs' appeal, *Briggs*, ¶ 16, he could not relitigate it in postconviction proceedings. *See* § 46-21-105(2), MCA.

[5] In his amended petition, Briggs made a standalone claim of trial court error in failing to appoint counsel at the withdrawal hearing. However, because he could have, but did not, raise that claim of error on direct appeal, it was procedurally barred under § 46-21-105(2), MCA, and the District Court properly dismissed it. Briggs does not challenge that ruling on appeal.

7

¶16    Briggs insists that his fixed-fee contract with retained trial counsel created a conflict of interest causing counsels' complete and total failure to act as his advocate and the State's adversary—a presumptively prejudicial denial of effective assistance of counsel under *Cronic*.  But, for reasons explained below, *Cronic* does not apply here.

***Cronic* and *Strickland* Claims**

¶17    *Cronic*, and its companion case, *Strickland*, govern the effectiveness of representation guaranteed under the Sixth Amendment.  *Strickland* outlines the standard for performance-based "actual ineffectiveness of counsel" claims, requiring a backward-looking assessment of how counsel actually performed through a lens that presumes counsel's conduct was reasonable if within prevailing professional norms.  *Strickland*, 466 U.S. at 687-91, 104 S. Ct. at 2064-66.  The defendant must overcome counsel's presumed reasonable performance by showing specific counsel errors and resulting prejudice.  *Strickland*, 466 U.S. at 691-96, 104 S. Ct. at 2066-69.  As such, *Strickland* claims require a record and are therefore best suited for postconviction proceedings where courts may inquire into counsel's strategy and interactions with the defendant.  *State v. Cheetham*, 2016 MT 151, ¶¶ 14, 29, 384 Mont. 1, 373 P.3d 45 (we review only record-based IAC claims on direct appeal);[6] *Rose v. State*, 2013 MT 161, ¶ 18, 370 Mont. 398, 304 P.3d 387.  A defendant who meets the two-part *Strickland* test—deficient performance and a reasonable probability that, but for counsel's errors, the

---

[6] *Overruled in part by State v. Johnson*, 2019 MT 34, ¶ 19, 394 Mont. 245, 435 P.3d 64.

result of the proceeding would be different—establishes "actual" ineffective assistance of counsel entitling him to a new trial.

¶18    *Cronic*, on the other hand, provides that certain circumstances may amount to "an actual breakdown of the adversarial process" "so likely to prejudice the accused" that constitutionally ineffective assistance of counsel may be presumed. *Cronic*, 466 U.S. at 657-62, 667, 104 S. Ct. at 2046-48, 2051. Unlike *Strickland* IAC claims, *Cronic* claims arise out of a structural "denial of counsel" and therefore do not require any specific inquiry into counsel's "actual performance." *Cronic*, 466 U.S. at 657-62, 104 S. Ct. at 2046-48. They are also exceedingly rare. *Rose*, ¶ 32; *City of Libby v. Hubbard*, 2018 MT 2, ¶ 16, 390 Mont. 108, 408 P.3d 532. The "*Cronic* error" exists in only narrow circumstances: (1) where there is a complete denial of counsel at a critical stage;[7] (2) where counsel fails entirely to subject the prosecution's case to meaningful adversarial testing; or (3) where counsel is called upon to provide assistance under circumstances where even competent counsel most likely could not. *See Cronic*, 466 U.S. at 657-62, 104 S. Ct. at 2046-48; *accord State v. Schowengerdt*, 2018 MT 7, ¶ 32, 390 Mont. 123, 409 P.3d 38; *Hubbard*, ¶ 16; *Rose*, ¶ 32; *Hammer*, ¶¶ 12-13. Apart from circumstances of this "magnitude, . . . there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic*, 466 U.S. at 659 n.26, 662, 104 S. Ct. 2047-48 (citing *Strickland*).

---

[7] *Cronic* defined the "denial of counsel" as "when counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceeding," which *Strickland* said may include denial of counsel by government interference. *Cronic*, 466 U.S. at 659 n.25, 104 S. Ct. at 2047; *Strickland*, 644 U.S. at 692, 104 S. Ct. at 2067 (citing *Cronic*).

¶19 The inherent structural error contemplated in *Cronic* is therefore distinct from an "actual" performance-based IAC claim under *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 695-98, 122 S. Ct. 1843, 1850-52 (2002). *Cronic* error implicates a systemic denial of counsel's assistance resulting from very specific circumstances—those that are so inherently prejudicial that we may assume the defendant was denied his right to effective counsel without looking at counsel's actual performance or whether it undermined the fairness of the outcome. Although *Strickland* also implicates a denial of effective assistance of counsel, *Strickland* claims of "actual ineffectiveness of counsel" arise out of specific instances of attorney error so prejudicial that they make the trial outcome unreliable. *Strickland*, 466 U.S. at 691-92, 104 S. Ct. at 2066-67 ("deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance"); *Cronic*, 466 U.S. at 658, 104 S. Ct. at 2046 ("[a]bsent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated"). The defendant can only avoid having to meet *Strickland*'s requirements of attorney error and resulting prejudice by showing inherently prejudicial *circumstances*. Unless a defendant can show circumstances of the "magnitude" described in *Cronic*,[8] he can "make out a claim of ineffective assistance *only* by pointing to specific

---

[8] In *Cronic*, the Supreme Court used the case of the Scottsboro Boys as an example of a rare circumstance that could make it so unlikely that the defendant receives effective assistance of counsel that ineffective assistance may be presumed without having to consider counsel's actual performance in those circumstances. *Cronic*, 466 U.S. at 661-62, 104 S. Ct. at 2047-48 (discussing *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55 (1932) (court appointed an out-of-state lawyer with no local experience who had no time to prepare to represent the defendants in a capital case the day of their trial)).

errors made by trial counsel," subject to *Strickland*'s standard. *Cronic*, 466 U.S. at 659 n.26, 666 n.41, 104 S. Ct. at 2047, 2051 (emphasis added). Therefore, "*Cronic* provides an *alternative* to *Strickland* in extremely limited situations." *Rose*, ¶ 32 (citing *State v. Peart*, 2012 MT 274, ¶ 24, 367 Mont. 153, 290 P.3d 706) (stating the same) (emphasis added)).[9]

**Strickland Conflict-Based IAC Claims**

¶20 In the same vein as *Cronic*'s inherently prejudicial circumstances, *Strickland* identifies a circumstance that could give rise to a "similar, though more limited, presumption of prejudice" in the actual IAC context: "when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 691-93, 104 S. Ct. at 2066-67 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 1719 (1980)).[10] A defendant claiming IAC under *Strickland* due to a conflict of interest must show that counsel actively represented conflicting interests and that the conflict adversely affected counsel's performance.[11] *Strickland*, 466 U.S. at 691-93, 104 S. Ct. at 2066-67 (citing *Cuyler*);

---

[9] To any extent that *Cronic* is an "exception," it is only an exception to the general requirement that a defendant show ineffective assistance of counsel by deficient performance and resulting prejudice. We clarify that *Cronic* is not an "exception" to the second, prejudice prong of *Strickland* because a defendant making a claim under *Cronic* does not have to show that counsel's performance was deficient, only that the surrounding circumstances were of such "magnitude" that "counsel failed to function in any meaningful sense as the Government's adversary." *Cronic*, 466 U.S. at 662, 666, 104 S. Ct. at 2048, 2051.

[10] *Cuyler* held that, "in order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350, 100 S. Ct. at 1719.

[11] A conflict of interest is a breach of the duty of loyalty, "perhaps the most basic of counsel's duties," but its "precise effect" is "difficult to measure." *Strickland*, 466 U.S. at 691-93, 104 S. Ct. at 2066-67. But, unlike *Cronic* errors, *Strickland* conflicts of interest do not give rise to a "per se

11

*accord State v. Deschon*, 2002 MT 16, ¶¶ 17-21, 308 Mont. 175, 40 P.3d 391 (it must be an "actual conflict . . . proved through a factual showing on the record" (citing *Cuyler*)); *State v. Christensen*, 250 Mont. 351, 355-56, 820 P.2d 1303, 1306 (1991) (conflict-based IAC claims are distinct from other claims of counsel error subject to the two-part *Strickland* test (citing *Cuyler*)).[12] If the defendant makes that showing, he establishes conflict-based IAC under *Strickland*.

¶21 Both *Strickland* and *Cronic* claims may be based on a conflict of interest, i.e., counsel's breach of the duty of loyalty. The showing required will depend on the context of the assertion. A defendant alleging IAC based on a conflict of interest will have to show that counsel actively represented conflicting interests and that the conflict adversely affected counsel's performance. *Strickland*, 466 U.S. at 691-93, 104 S. Ct. at 2066-7l; *Deschon*, ¶¶ 17-21; *Christensen*, 250 Mont. at 355-58, 820 P.2d at 1306-08. If he can, he satisfies *Strickland* without having to show the likelihood of a different outcome. *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067.

¶22 Conversely, a defendant who alleges a denial of effective assistance of counsel based on conflicting loyalties—either an actual or "constructive" denial or a complete

---

rule of prejudice." Instead, "prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Strickland*, 466 U.S. at 691-93, 104 S. Ct. at 2066-67 (citing *Cuyler*). *Accord Frazer v. United States*, 18 F.3d 778, 786-88 (9th Cir. 1994) (Beezer, J., concurring) (IAC claims based on a conflict of interest "should be evaluated under the limited presumption of *Cuyler*").

[12] *Accord Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067 ("conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice").

failure of counsel to act as his advocate and the State's adversary—must show that the circumstances of his case rise to the level of "a complete failure of the adversarial process" to trigger the *Cronic* presumption of inherent prejudice. *See Rose*, ¶ 32. A breach of counsel's duty of loyalty that amounts to counsel completely and totally ceasing to act as the State's adversary is presumptively prejudicial under *Cronic* without specific inquiry into counsel's "actual performance" at the criminal proceedings. Conflicts amounting to actual ineffective assistance under *Strickland* and to the structural denial of counsel under *Cronic* may look very similar; in the end, *Strickland* claims are generally performance-based while *Cronic* claims are circumstantial and structural.

**"Constructive" Denial of Counsel in the Substitution Context**

¶23 There is one more circumstance implicated by Briggs' arguments at postconviction and on appeal: the "constructive" denial of counsel. In Montana, the "constructive" denial of counsel arises in the context of substitution of counsel. There, if a defendant can show either an "actual conflict of interest," an "irreconcilable conflict" between him and his counsel, or a "complete breakdown" in communication, he is entitled to new counsel. *State v. Johnson*, 2019 MT 34, ¶¶ 18-19, 394 Mont. 245, 435 P.3d 64.[13] This is because, "when communication between counsel and defendant becomes so compromised that mounting a defense is impossible, the defendant is neither being heard by counsel nor

---

[13] *Johnson*, ¶¶ 18-19, decided in 2019, overruled prior statements of the substitution standard, eliminating the requirement that a defendant show "ineffective assistance of counsel." We decided that requiring a showing of ineffective assistance invited collateral *Strickland* IAC inquiries beyond the limited scope of substitution proceedings and created confusion and redundancy in the law.

receiving effective assistance." *Johnson*, ¶¶ 18-19. In such case, the defendant is "constructively" denied his right to effective assistance of counsel and the trial court *must* appoint new counsel to protect the right. *Johnson*, ¶ 18. Refusal to appoint new counsel when "the relationship between lawyer and client completely collapses" is itself a constitutional violation, so the court has an obligation to require counsel's withdrawal under those circumstances. *See State v. Gallagher*, 2001 MT 39, ¶ 9, 304 Mont. 215, 19 P.3d 817 (citing *United States v. Moore*, 159 F.3d 1154 (9th Cir. 1998), and *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970)).[14] This "constructive" denial of counsel is exactly the type of inherently prejudicial circumstance contemplated in *Cronic*—a court's failure to substitute constitutionally ineffective counsel gives rise to a presumption of prejudice warranting reversal and a new trial with constitutionally effective representation. *See, e.g.*, *Jones*, 278 Mont. at 134, 923 P.2d at 568; *accord State v. Hendershot*, 2007 MT 49, ¶¶ 20-30, 336 Mont. 164, 153 P.3d 619 (denial of withdrawal and substitution of counsel reversible error where counsel admitted the "attorney-client relationship was in an irreparable state and that the firm wouldn't be able to go forward" with representation).

**Montana's *Cronic* Cases**

¶24 In *Jones*, a case on which Briggs relies, we considered whether the trial court had correctly denied counsel's motion to withdraw from representation two days before trial. At the withdrawal hearing, counsel told the court that Jones intended to perjure himself,

---

[14] *See Moore*, 159 F.3d at 1158-61 (where an "irreconcilable conflict" between client and counsel "rose to the level of a breakdown described in *Brown*," the court's failure to substitute counsel was reversible error).

that he disagreed with Jones' refusal to accept a plea agreement, and that Jones had admitted to committing the charged offense. The court denied counsel's withdrawal request. *Jones*, 278 Mont. at 124-25, 923 P.2d at 562. We held that counsel had completely abandoned his duties of loyalty and confidentiality. In the presence of the court *and* the prosecution, counsel gratuitously disclosed confidential inculpatory admissions, said it was "repugnant" that Jones wanted to go to trial, and then explained in detail why he thought his client was "so clearly guilty," categorically putting his own interests in *not* going to trial above Jones' interests in exercising his constitutional rights. In doing so, counsel had "totally abandoned" his duty of loyalty based on these conflicted interests and took on an "adversarial role, . . . essentially joining the prosecution's efforts in obtaining a conviction." *Jones*, 278 Mont. at 132-33, 923 P.2d at 567-68. Denying withdrawal and requiring Jones to continue to trial with such ineffective counsel was presumptively prejudicial and thus warranted reversal and a new trial. *Jones*, 278 Mont. at 134, 923 P.2d at 568 (citing *Frazer v. United States*, 18 F.3d 778, 782-83 (9th Cir. 1994) (citing *Cronic*)); *accord Cronic*, 466 U.S. at 659, 104 S. Ct. at 2047 ("if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable").

¶25    By contrast, in *State v. Bekemans*, 2013 MT 11, 368 Mont. 235, 293 P.3d 843, we declined to find circumstances similar to those in *Jones*. First, counsel's statements to the judge that Bekemans "doesn't give a rip" and that the State's plea offer was "an absolute bonus" did not evince a total abandonment of counsel's duties of loyalty and confidentiality

or a joining in the State's efforts to obtain a conviction. And, critically, at the hearing on withdrawal, the court determined that Bekemans and her counsel "had lost all meaningful ability to communicate" and therefore granted withdrawal. *Bekemans*, ¶¶ 16, 28-37. Distinguishing Bekemans' claims of inherent prejudice, we explained that "the prejudice that the defendant presumptively suffered in *Jones* was . . . that the same attorney who abandoned him continued to serve as counsel throughout his trial." *Bekemans*, ¶ 34. We said that Bekemans "could not have suffered the same prejudice that Jones suffered" because, unlike in *Jones*, the court granted Bekemans' counsel's motion to withdraw and assigned new counsel who represented her at trial over five months later. *Bekemans*, ¶ 34. In other words, there was no *Cronic* error warranting a presumption of prejudice or reversal. In turn, Bekemans had to show actual ineffective assistance of counsel under *Strickland*, which she failed to do. *Bekemans*, ¶¶ 34-37.

¶26 We restated this rule in *Hubbard*. There, Hubbard argued for reversal due to ineffective assistance of counsel. Her trial counsel had, in seeking withdrawal, disclosed confidential communications and trial strategy and described the defense as "frivolous"—violating the duties of loyalty and confidentiality. *Hubbard*, ¶¶ 5-6, 15. But, like in *Bekemans* and unlike in *Jones*, counsel was eventually removed. Even though the court denied counsel's withdrawal motion, OPD substituted counsel where the conflict caused an irretrievable breakdown in the attorney-client relationship. *Hubbard*, ¶¶ 5-6, 17-18. Hubbard thus proceeded to trial with effective assistance of counsel, curing any potential prejudice. Nothing in those circumstances amounted to a "complete" failure to

subject the prosecution's case to meaningful adversarial testing. Therefore, as in *Bekemans*, there was no presumptively prejudicial *Cronic* error and so Hubbard had to show actual ineffective assistance of counsel under *Strickland*, which she failed to do. *Hubbard*, ¶¶ 18, 19-23.

**Briggs' *Cronic* and *Strickland* Claims**

¶27    Here, Briggs cannot show a structural denial of counsel, i.e., *Cronic* error. First, even if, arguendo, Briggs could establish that retained trial counsels' advocating for withdrawal amounted to a "constructive" denial of counsels' assistance—Briggs cannot show that the trial court's permitting withdrawal upon a complete breakdown in the attorney-client relationship that rendered counsel unable to effectively assist Briggs in his defense was presumptively prejudicial. By allowing counsel to withdraw and appointing new counsel, the court did precisely what the Constitution requires to *prevent* the prejudice that inevitably results from proceeding with constitutionally ineffective counsel. As we said in *Bekemans*, and restated in *Hubbard*, the prejudice in *Jones* was from forcing the defendant to continue to trial with ineffective counsel; substituting ineffective counsel in *Bekemans* and *Hubbard* resolved any potential prejudice, as did the trial court's permitting withdrawal and appointing new counsel here.

¶28    Second, even if, arguendo, the fixed-fee contract created some conflict of financial interests between Briggs and his counsel, Briggs cannot show that the "conflict" created any circumstance where counsel *completely and totally* failed to act as his advocate and the State's adversary. To qualify as presumptively prejudicial under *Cronic*, an attorney's

failure in advocacy "must be complete." *Hubbard*, ¶ 16 (citing *Bell*, 535 U.S. at 695-98, 112 S. Ct. at 1850-51 (there must be a failure to oppose the prosecution's case "as a whole," not just "at specific points")); *Rose*, ¶ 32; *Hammer*, ¶ 13; *c.f. Peart*, ¶¶ 28, 30 (*Strickland* applies when a defendant says counsel "failed to oppose the State at specific points in the proceeding"). "Only *non*-representation, not poor representation, triggers a presumption of prejudice." *Hubbard*, ¶ 16 (citation omitted, emphasis added). Briggs has not met this exceptionally high standard.

¶29 Here, Briggs' retained trial counsel represented him for ten months, during that time filing numerous motions on his behalf, investigating witnesses, pursuing discovery, consulting with investigators and experts, and obtaining a plea agreement that would result in dismissal of all but one charge and reduce his total criminal liability. Unlike the total failure of advocacy present in *Jones*, we cannot say on this record that counsel completely and totally abandoned their duties of loyalty and confidentiality and essentially joined the prosecution's efforts in obtaining a conviction. Counsels' seeking withdrawal in the face of a complete breakdown in the attorney-client relationship was not the failure to advocate or test the State's case *in toto* required for the presumption of prejudice to arise under *Cronic* and its Montana progeny. In fact, seeking withdrawal avoided the prejudice that would inevitably result if Briggs were to proceed to trial with counsel he had no confidence in to effectively represent him.

¶30 A party who cannot show *Cronic* error must show actual ineffective assistance of counsel under *Strickland* to establish a constitutional violation of the right to effective

assistance—either by satisfying *Strickland*'s two-prong test or its limited-presumption exception arising out of a conflict of interest. *See Cronic*, 466 U.S. at 659 n.25, 666-67, 104 S. Ct. at 2047, 2051; *Strickland*, 466 U.S. at 692-93, 104 S. Ct. at 2067. Briggs cannot meet either standard.

¶31 First, Briggs has not shown an actual conflict of interest or adverse effects. *Strickland*, 466 U.S. at 692-93, 104 S. Ct. at 2067 (citing *Cuyler*); *Deschon*, ¶¶ 17-21; *Christensen*, 250 Mont. at 355-56, 820 P.2d at 1306. We agree with the District Court that the parties' fixed-fee contract did not create a conflict of interest amounting to ineffective assistance of counsel. In *People v. Doolin*, 198 P.3d 11, 29-33 (Cal. 2009), the defendant claimed that his court-appointed counsel's "lump sum fee" created a financial conflict, incentivizing counsel to "maximize his own compensation by cutting expenses for investigative and expert services." The California Supreme Court acknowledged that "almost any fee agreement . . . may give rise to a conflict," but that a "mere possibility for misconduct" could not overcome the presumption that counsel will abide by his ethical duties and not neglect his client's interests to advance his own. *Doolin*, 198 P.3d at 29-33. Where the defendant could not show that the lump-sum contract actually adversely affected counsel's performance, he was not entitled to any presumption of prejudice and his conflict-based IAC claim failed. *Doolin*, 198 P.3d at 34-43.

¶32 Though Briggs claims that the flat-fee advance payment incentivized counsel to undermine his defense and seek withdrawal under false pretenses, the record does not support that assertion. As stated above, counsel worked for ten months to develop and

prepare Briggs' defense, secure a plea deal, and then go to trial when he declined to accept the State's offer. And, as is obvious on the record of the January 2015 withdrawal hearing, counsels' ultimate withdrawal was not a "pretext" to retain payments—it was due to an absolute and irreconcilable breakdown in the attorney-client relationship. Briggs has not made the required showing that the fixed-fee contract created an actual conflict of interest that adversely affected counsels' performance. *Deschon*, ¶¶ 17-21; *Christensen*, 250 Mont. at 355-58, 820 P.2d at 1306-08. Accordingly, Briggs has not established conflict-based ineffective assistance of counsel under *Strickland*.

¶33 Second, for the same reasons, Briggs' "actual" IAC claim under *Strickland* also fails. Briggs must show both deficient performance and resulting prejudice to the outcome of proceedings; if he fails to show either, there was no constitutional deprivation. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069; *see also Hammer*, ¶ 10 (when it is possible to dispose of an IAC claim based on the failure to show prejudice, "it is best to follow that course"). Briggs claims that counsels' retaining payments after withdrawal kept him from hiring new counsel and forced him to proceed with court-appointed counsel.[15] But Briggs does not contend that his court-appointed trial counsel was constitutionally ineffective— he does not identify any ruling, strategic decision, or evidentiary error of court-appointed counsel that prejudiced the outcome of his trial. In fact, he admits that his public defenders

---

[15] Briggs also claims that withdrawal caused a prejudicial delay in proceedings, but we have already considered how counsels' withdrawal affected Briggs' speedy trial right and decided that his right to a speedy trial was not violated. *Briggs*, ¶ 16, *supra* note 4. We will not revisit that holding.

obtained a *more favorable* outcome at trial than the outcome anticipated by retained counsel.[16] This is not prejudice.

¶34 For the foregoing reasons, we hold that Briggs has not shown any circumstances of such magnitude as to constitute a complete and total failure of the adversarial process warranting a presumption of ineffectiveness under *Cronic*. Briggs has also not shown that his retained trial counsel were actually constitutionally ineffective under *Strickland*. The District Court thus correctly dismissed his retained trial counsel IAC claim.

**Briggs' Claims Regarding Fee Retention**

¶35 Finally, even apart from the constitutional deficiencies in Briggs' *Cronic* and *Strickland* claims, the undisputed record further reflects that Briggs' fee dispute with retained trial counsel was separately litigated and resolved. In 2019, Briggs filed a fee dispute with the state bar regarding retained trial counsels' representation. He initiated PCR proceedings in 2020, while that dispute was pending. After review, the bar determined in 2021 that no refund was owed. Then, Briggs filed a civil suit. The district court dismissed all Briggs' claims but one—breach of contract. Briggs appealed pro se in 2022.

¶36 In January 2023, during court-ordered mediation on appeal, Briggs executed a settlement agreement releasing retained trial counsel from "all claims" related to their

---

[16] Briggs noted in postconviction proceedings that court-appointed trial counsel obtained (1) a conviction on a lesser-included offense (misdemeanor sexual assault versus felony attempted SIWC as-charged); (2) a lesser sentence for the escape offense by successfully arguing it was a misdemeanor and not a felony; and (3) a dismissal with prejudice of the severed charge for failure to register as a sex offender.

representation of Briggs, the "Fixed Fee Contract," fee dispute arbitration, and the underlying civil action and its associated appeal (DA 22-0442) in exchange for an agreed sum. The settlement terms provided that Briggs remained free to pursue postconviction or habeas relief. In March 2023, Briggs asked to dismiss his appeal with prejudice, attesting that the matter had been "resolved to the mutual satisfaction of all parties following mediation." We dismissed his appeal with prejudice. *Briggs v. Watson*, Order, No. DA 22-0442 (Mar. 13, 2023). The district court likewise dismissed the underlying civil matter shortly thereafter. Briggs filed his amended PCR petition in 2024, claiming IAC based on, as pertinent, counsels' unlawful retention of "unearned fees."

¶37 Based on the undisputed record, the District Court concluded that Briggs had resolved his fee dispute with retained trial counsel. It further concluded that Briggs' claims related to the fixed-fee contract pertained to the previously-resolved fee dispute and not the effectiveness of representation. Nevertheless, Briggs maintains that counsel "did not earn" the fees they claimed and therefore unlawfully retained them, preventing Briggs from hiring new counsel and "forcing" him to trial with court-appointed counsel instead. He also contends that he was "forced" to settle with counsel so he could afford postconviction representation. But Briggs' own words bely that claim. In any event, the settlement agreement resolved the dispute over the fee contract and counsels' retention of funds, leaving no remaining fee controversy for the PCR court to adjudicate.

¶38 At bottom, the entire premise of Briggs' IAC claim is that retained trial counsel "failed to perform the agreed upon services" and "kept money that they did not earn."

22

Briggs cannot transform what was litigated and resolved as a contractual fee dispute into a Sixth Amendment claim for postconviction relief under Title 46, chapter 21, MCA, by restyling contract-based allegations as an IAC claim. The District Court was correct in deciding that the matter of fee dispute had concluded and was not relevant to postconviction relief.

¶39    2. *Whether appellate counsel was constitutionally ineffective for failing to argue that the trial court erred in not appointing separate counsel to represent Briggs at the withdrawal hearing.*

¶40    A claim of ineffective assistance of appellate counsel is assessed under the two-part *Strickland* standard. *Rose*, ¶ 28; *Rosling v. State*, 2012 MT 179, ¶ 32, 366 Mont. 50, 285 P.3d 486. The defendant must show appellate counsel's performance fell below an objective standard of reasonableness and a reasonable probability that, but for counsel's deficient performance, the defendant would have prevailed on appeal. *DuBray v. State*, 2008 MT 121, ¶ 31, 342 Mont. 520, 182 P.3d 753. It is well established that appellate counsel need not raise every colorable issue on appeal; the presumption of effectiveness can only be overcome when ignored issues are "clearly stronger" than those actually presented. *Rose*, ¶¶ 29-32.

¶41    Briggs contends that his appellate counsel was constitutionally ineffective for failing to argue that the trial court committed reversible error by not appointing counsel to represent him at the withdrawal hearing, which he says was a "critical stage" entitling him to representation.[17] The right to counsel arises at every "critical stage" of criminal

---

[17] Although a freestanding claim that the trial court erred by not appointing counsel at the withdrawal hearing would be procedurally barred under § 46-21-105(2), MCA, Briggs raises the

proceedings, which we have defined as "any step of the proceeding where there is potential for substantial prejudice to the defendant." *State v. Zlahn*, 2014 MT 224, ¶ 18, 376 Mont. 245, 332 P.3d 247 (citing *Ranta v. State*, 1998 MT 95, ¶ 17, 288 Mont. 391, 958 P.2d 670). "The policy basis of the right is to allow the defendant to intelligently exercise his rights and prepare a defense, and to counterbalance the trained advocate of the State." *State v. Dieziger*, 200 Mont. 267, 270, 650 P.2d 800, 802 (1982); *State v. Scheffer*, 2010 MT 73, ¶ 20, 355 Mont. 523, 230 P.3d 462 (right to counsel "broadly guarantees an accused aid in coping with legal problems or assistance in meeting his adversary (*the government*) at critical stages of the criminal proceedings" (emphasis added)). Ordinarily, a "critical stage" of proceedings involves adjudication of guilt or sentencing, admissibility of evidence, or pleadings—i.e., stages where prejudice "inheres in the absence of counsel." *See, e.g.*, *Finley*, 276 Mont. at 143-46, 915 P.2d at 219-21 (substitution hearing was a critical stage where proceeding to upcoming sentencing with ineffective counsel risked substantial prejudice); *compare State v. Gazda*, 2003 MT 350, ¶¶ 26-33, 318 Mont. 516, 82 P.3d 20 (right to counsel does not attach at the "initial inquiry" on defendant's request to substitute counsel).[18]

---

issue on appeal in the distinct posture of an ineffective assistance of appellate counsel claim. *See* note 5, *supra*. We therefore address the underlying merits only insofar as necessary to determine whether appellate counsel performed deficiently and whether Briggs was prejudiced under *Strickland*.

[18] *See also Ranta*, ¶ 22 (sentencing and later sentence review both a "critical stage" requiring representation); *compare Zlahn*, ¶¶ 10, 17-20 (10-day window to ask for substitution of judge not a "critical stage" of proceedings); *Dieziger*, 200 Mont. at 270, 650 P.2d at 802 (initial appearance not a "critical stage"); *State v. Farnsworth*, 240 Mont. 328, 333, 783 P.2d 1365, 1368 (1989) (filing of information not a "critical stage").

¶42 Briggs says the withdrawal hearing was a "critical stage" of proceedings under *Finley* because counsel took an adversarial position against him, prejudicing his rights to use retained payments to hire new counsel in the event of withdrawal. In *Finley*, the defendant sent a post-verdict letter to the court asserting that his trial counsel was ineffective and seeking new counsel for his upcoming sentencing. At the substitution hearing, Finley's counsel "examined" and "confronted" Finley regarding the sufficiency of his ineffectiveness allegations and then took the stand to "testify" in response and "rebut" those allegations. The court agreed with counsel that he was providing effective representation and denied substitution. *Finley*, 276 Mont. at 131-32, 143-46, 915 P.2d at 212, 219-21. On appeal, we considered Finley's claim that the court should have appointed counsel to represent him at the hearing.

¶43 The hearing in *Finley* was a "critical stage" because Finley's right *to effective assistance of counsel was implicated.* Counsel obviously "took an antagonistic position toward his client" by advocating for himself and not Finley's right to effective counsel, which the trial court should have recognized as a conflict of interest entitling Finley to new counsel for that proceeding. Where there was the possibility that Finley would head to sentencing with ineffective counsel "who had just testified against him," outside counsel should have been appointed to advocate for Finley's rights to effective assistance and substitution under those circumstances. *Finley*, 276 Mont. at 143-46, 915 P.2d at 219-21.

¶44 Unlike *Finley*, where counsel's testimony directly undermined the defendant's right to effective representation at sentencing, the testimony here was limited to the existence of

25

a breakdown in communication between Briggs and counsel and did not bear on Briggs' guilt, punishment, or trial strategy. At the January 2015 hearing, Briggs *and* his retained trial counsel substantially agreed that their relationship had reached a stand-off and that counsel could no longer effectively represent Briggs at his upcoming trial. Briggs *opposed* withdrawal not because he believed counsel could provide effective assistance, but because he did not want to forfeit payments made under the parties' fixed-fee contract and potentially proceed to trial with court-appointed counsel. Finley faced the prospect of proceeding to sentencing with counsel who had just testified against him on a matter directly affecting his liberty, but Briggs faced no comparable adjudicative risk. The possibility of proceeding with court-appointed counsel did not create "the potential for substantial prejudice" contemplated by our definition of a "critical stage" in proceedings. Accordingly, *Finley* is inapposite.[19]

¶45    The fact that Briggs might not be able to hire private counsel after withdrawal also did not create any "potential for substantial prejudice." True, a criminal defendant "who does not require appointed counsel" has a right "to choose who will represent him." *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557 (2006) ("the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified

---

[19] *United States v. Lii*, 393 Fed. Appx. 498 (9th Cir. 2010), a non-cite opinion on which Briggs also relies, is also distinguishable. There, the trial court properly rejected Lii's attempted waiver of conflicted representation and allowed counsel to withdraw. The trial court's decision to not appoint counsel to represent Lii at the withdrawal hearing was also not error because "the withdrawal hearing did not result in Lii being denied any rights" and instead "resulted in his receiving unconflicted counsel with ample time to prepare for trial." The withdrawal hearing was therefore "not a critical stage." *Lii*, 393 Fed. Appx. at 501-02.

attorney whom that defendant can afford to hire"; trial court's erroneous refusal to admit defendant's preferred counsel violated his constitutional right to counsel of choice).  But he does not have any right to counsel "he cannot afford."  *See Frazer*, 18 F.3d at 783 (citations omitted).[20]  The possibility that Briggs could not afford to hire new counsel did not create a risk of "substantial prejudice"—if indigent, he would be appointed counsel and would not go without representation.  This is exactly what happened.

¶46    Briggs also claims that his right "to use lawfully owned property" to pay for counsel of his choice was implicated at the withdrawal hearing, making it a "critical stage." Briggs relies on *Luis v. United States*, 578 U.S. 5, 136 S. Ct. 1083 (2016), but *Luis* is distinguishable because it addressed governmental pretrial restraint of untainted assets needed to hire counsel of choice.  *Luis*, 578 U.S. at 10, 136 S. Ct. at 1088.  Here, neither the State nor the court restrained Briggs' assets.  The State played no role in Briggs' fee arrangement with retained counsel, and the court did not freeze Briggs' assets or prohibit Briggs from using lawfully possessed funds.  Any dispute regarding whether fees were earned arose from a private contractual relationship and bar/civil remedies and does not implicate the Sixth Amendment in the manner *Luis* contemplates.

¶47    Briggs' own arguments highlight the paradox here:  he says he was entitled to counsel to advocate for his interests, even though that would require newly-appointed counsel to argue *against* withdrawal of concededly ineffective counsel.  No counsel could reasonably advocate for continued representation under these circumstances.  Briggs' case

---

[20] "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *Gonzalez-Lopez*, 548 U.S. at 150, 126 S. Ct. at 2565.

is therefore not like *Finley*, where the defendant needed assistance of outside counsel to help him meaningfully advocate for *removal and substitution of ineffective counsel*, thereby securing his constitutional rights. Moreover, the trial court's refusal to permit ineffective counsel to withdraw would itself be constitutional error. *See*, *supra*, *Gallagher*, ¶ 9 (citing *Moore*, 159 F.3d at 1158); *Johnson*, ¶¶ 18-19. Briggs would have counsel forced upon him even though he expressly agreed they could not effectively represent him. The Constitution does not require the court to compel continued representation under such circumstances.

¶48    Here, where the attorney-client relationship was completely and irretrievably broken, the trial court granted withdrawal and immediately appointed counsel so that Briggs experienced no significant lapse in representation. In permitting counsel to withdraw, the court did exactly what it had to do to protect Briggs' rights and avoid the inevitable prejudice of continued representation by concededly ineffective counsel. Briggs was not entitled to court-appointed counsel to advocate for continuation of an irretrievably broken attorney-client relationship solely to avoid a potential loss of payments made under the fixed-fee contract. Accordingly, Briggs has not demonstrated a reasonable probability that, had appellate counsel raised this issue, we would have reversed his convictions. *Rose*, ¶ 32. We hold that Briggs' appellate counsel was not constitutionally ineffective under the circumstances.

28

**CONCLUSION**

¶49    We hold that Briggs has not shown the limited and extraordinary circumstances giving rise to a structural denial of counsel under *Cronic*.  Briggs has also not shown that his retained trial counsel was constitutionally ineffective under *Strickland*.  Finally, Briggs has not shown that his appellate counsel provided constitutionally ineffective assistance on direct appeal.  Accordingly, we affirm the District Court's April 2025 dismissal of Briggs' October 2024 amended petition for postconviction relief.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON